## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>STRUCTURLAM MASS TIMBER U.S., INC., *et al.*,<br><br>        Debtors. | Chapter 11<br><br>Case No. 23-10497 (CTG)<br><br>(Jointly Administered) |
| HEATHER L. BARLOW AS LIQUIDATING TRUSTEE OF THE STRUCTURLAM LIQUIDATING TRUST,<br><br>        Plaintiff,<br><br>        v.<br><br>BRIAN HOOPER, CINDI MARSIGLIO, AND CHRISTINE ALLEN,<br><br>        Defendants. | Adversary No. 25-51040 (CTG) |

## DEFENDANTS' OPENING BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT

# **TABLE OF CONTENTS**

**Page**

I. NATURE AND STAGE OF PROCEEDINGS ...................................................................1

II. SUMMARY OF ARGUMENT ......................................................................................1

III. STATEMENT OF FACTS ...........................................................................................3

    A.    Walmart Contracts With Structurlam to Help Build Walmart's Home Office .................................................................................................................3

    B.    Defendants Join SLP's Board ........................................................................4

    C.    Walmart and Structurlam Enter Into a New Supply Agreement, Which Walmart Later Terminates .............................................................................5

    D.    Debtors File For Bankruptcy and File This Lawsuit More Than Two Years Later .............................................................................................................6

IV. ARGUMENT ...........................................................................................................6

    A.    Plaintiff's Breach of Fiduciary Duty Claim Should Be Dismissed .........................7

        1.    Plaintiff's Breach of Fiduciary Duty Claim Is Time-Barred .......................8

        2.    Plaintiff Fails to Allege That Defendants Breached a Fiduciary Duty.................................................................................................10

            a.    Plaintiff Improperly Relies on Group Pleading .............................11

            b.    Plaintiff Fails to Allege a Breach of the Duty of Care...................11

            c.    Plaintiff Fails to Allege Breaches of the Duties of Loyalty and Good Faith.............................................................................13

        3.    Plaintiff Fails to Allege Defendants Owed and Breached Fiduciary Duties to Any Other Debtor........................................................................15

    B.    Plaintiff's Tortious Interference Claim Should Be Dismissed .............................17

V. CONCLUSION.........................................................................................................21

## TABLE OF AUTHORITIES

### CASES

*Aclate, Inc v. Eclipse Mktg. LLC*,
  No. 20-576-RGA, 2020 WL 6158579 (D. Del. Oct. 21, 2020) .............................................. 24

*Alvarado v. St. Mary-Rogers Mem'l Hosp., Inc.*,
  257 S.W.3d 583 (Ark. Ct. App. 2007) ................................................................................... 23

*Am. Bottling Co. v. BA Sports Nutrition, LLC*,
  No. N19C-03-048 AML CCLD, 2021 WL 6068705 (Del. Super. Ct. Dec. 15,
  2021) .............................................................................................................................. 20, 21

*Arbutus Inv. Mgmt. Ltd. v. Russell*,
  2022 BCSC 72 (Can.) ............................................................................................................ 10

*Aronson v. Lewis*,
  473 A.2d 805 (Del. 1984) ...................................................................................................... 14

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................................................. 7

*Baker v. Bank of Am., N.A.*,
  No. 16 Civ. 488, 2016 WL 9409022 (S.D.N.Y. Oct. 31, 2016) ............................................ 11

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................................................................... 17

*Burtch v. Zachem*,
  Adv. Pro. No. 22-50255 (TMH), 2023 WL 6140247 (Bankr. D. Del. Sept. 19,
  2023) .............................................................................................................................. 12, 18

*CRE Niagara Holdings, LLC v. Resorts Grp., Inc.*,
  No. N20C-05-157 PRW CCLD, 2022 WL 1749181 (Del. Super. Ct. May 31,
  2022) ...................................................................................................................................... 25

*Faulkner v. Ark. Child.'s Hosp.*,
  69 S.W.3d 393 (Ark. 2002) .............................................................................................. 21, 22

*Grant Thornton LLP v. New Brunswick*,
  2021 SCC 31 (Can.) ............................................................................................................... 10

*Hunt v. Riley*,
  909 S.W.2d 329 (Ark. 1995) .................................................................................................. 25

*In re AgFeed U.S., LLC*,
    546 B.R. 318 (Bankr. D. Del. 2016) ................................................................. 13, 16

*In re Cred Inc.*,
    650 B.R. 803 (Bankr. D. Del. 2023), *aff'd*, 658 B.R. 783 (D. Del. 2024) ...................... 15, 16

*In re Essar Steel Minnesota LLC*,
    No. 16-11626 (BLS), 2019 WL 2246712 (Bankr. D. Del. May 23, 2019) ........................... 20

*In re Fedders N. Am. Inc.*,
    405 B.R. 527 (Bankr. D. Del. 2009) ................................................................. 11, 14

*In re HH Liquidation, LLC*,
    590 B.R. 211 (Bankr. D. Del. 2018) ...................................................................... 20

*In re JC USA, Inc.*,
    Adv. Pro. No. 25-50002 (JKS), 2025 WL 2354184 (Bankr. D. Del. Aug. 13,
    2025) .......................................................................................................... 7

*In re MTE Holdings LLC*,
    Adv. Pro. No. 21-51255 (CTG), 2024 WL 3272224 (Bankr. D. Del. July 1,
    2024) .......................................................................................................... 8

*In re Old BPSUSH Inc.*,
    Adv. Pro. No. 19-50726 (BLS), 2020 WL 6818435 (Bankr. D. Del. June 30,
    2020) ................................................................................................... passim

*In re Old BPSUSH, Inc.*,
    Adv. Pro. No. 19-50726 (BLS), 2021 WL 4453595 (D. Del. Sept. 29, 2021) ..... 11, 14, 17, 18

*In re PennySaver USA Publ'g LLC*,
    587 B.R. 445 (Bankr. D. Del. 2018) ...................................................................... 19

*In re Space Case*,
    Adv. Pro. No. 23-50748 (BLS), 2024 WL 1628440 (Bankr. D. Del. Apr. 15,
    2024) ......................................................................................................... 14

*In re Tropicana Ent., LLC*,
    520 B.R. 455 (Bankr. D. Del. 2014) ...................................................................... 11

*In re Zohar III, Corp.*,
    Adv. Pro. No. 20-50776 (KBO), 2021 WL 3124298 (D. Del. July 23, 2021) ............... 22, 23

*Lewis v. AimCo Props., L.P.*,
    No. 9934-VCP, 2015 WL 557995 (Del. Ch. Feb. 10, 2015) ....................................... 19

*McKenzie v. Navy Fed. Credit Union*,
    760 F. Supp. 3d 146 (D. Del. 2024) ................................................................ 4

*Meng Estate v. Liem*,
    2019 BCCA 127 (Can.) .................................................................................... 17

*Mountain Home Flight Serv., Inc. v. Baxter Cnty.*,
    No. 3:12-CV-03027, 2012 WL 2339722 (W.D. Ark. June 19, 2012) ............ 24, 25

*Oak Creek Inv. Props., Inc. v. Am. Elec. Power Serv. Corp.*,
    No. 4:18-CV-4009, 2020 WL 759929 (W.D. Ark. Feb. 14, 2020) ................ 22, 24

*Peoples Dep't Stores Inc. v. Wise*,
    2004 SCC 68 (Can.) ...................................................................................... 14, 15

*Smith v. Ark. Highway Police*,
    No. 4:13CV00301 JLH, 2013 WL 12320409 (E.D. Ark. Oct. 7, 2013) ............... 23

*Steinbuch v. Univ. of Ark.*,
    589 S.W.3d 350 (Ark. 2019) ............................................................................ 21

*Stone v. Ritter*,
    911 A.2d 362 (Del. 2006) ................................................................................. 20

*Trenwick Am. Litig. Tr. v. Ernst & Young, L.L.P.*,
    906 A.2d 168 (Del. Ch. 2006), *aff'd sub nom. Trenwick Am. Litig. Tr. v.*
    *Billett*, 931 A.2d 438 (Del. 2007) ................................................................ 13, 19

*Vichi v. Koninklijke Philips Elecs. N.V.*,
    62 A.3d 26 (Del. Ch. 2012) .............................................................................. 21

*Wallace v. Baylouny*,
    No. 1:16-cv-0047, 2016 WL 3059996 (E.D. Va. May 31, 2016) ....................... 23

*Witmer v. Armistice Cap. LLC*,
    No. 2022-0807-MTZ, 2025 WL 2350799 (Del. Ch. Aug. 14, 2025) ................... 19

*World Energy Ventures, LLC v. Northwind Gulf Coast LLC*,
    No. N15-C-03-241 WCC, 2015 WL 6772638 (Del. Super. Ct. Nov. 2, 2015) ..... 22

*Yucis v. Sears Outlet Stores, LLC*,
    813 F. App'x 780 (3d Cir. 2020) ...................................................................... 17

## STATUTES

11 U.S.C. § 108(a) ................................................................................................ 10

Canada Business Corporations Act, R.S.C. 1985 c C-44, § 122 ................................................13

Province of British Columbia Limitation Act, S.B.C. 2012, c 13 (Can.) ...................................... 8

## RULES

Fed. R. Bankr. P. 7012 ............................................................................................ 6

Fed. R. Civ. P. 12(b)(6) .......................................................................................... 6

Fed. R. Evid. 201 ................................................................................................ 20

## I.   NATURE AND STAGE OF PROCEEDINGS

This adversary proceeding arises from a Chapter 11 proceeding involving Structurlam Mass Timber U.S., Inc. ("Structurlam"), a Delaware corporation and former manufacturer of mass timber solutions.  On June 24, 2025, Plaintiff Heather L. Barlow, in her capacity as the liquidating trustee of the Structurlam Liquidating Trust ("Plaintiff"), filed a complaint ("Complaint" or "Compl.") alleging breaches of fiduciary duties and tortious interference with contract against Defendants Brian Hooper, Cindi Marsiglio, and Christine Allen ("Defendants").  Defendants, by and through their undersigned counsel, now submit this Opening Brief in Support of their Motion to Dismiss Plaintiff's Complaint.

## II.   SUMMARY OF ARGUMENT

Six years ago, Walmart announced plans to build a state-of-the-art home office in Bentonville, Arkansas.  Walmart hired Structurlam to supply timber for the project—which would consist of twelve buildings and over a million cubic feet of manufactured timber.  Because the project was so large and important, Structurlam built a new manufacturing facility in Arkansas and Walmart invested in Structurlam.  Specifically, Walmart acquired a 34% ownership interest in SLP Holdings Ltd. ("SLP"), which, in turn, owned 100% of Structurlam's voting stock.  As part of its investment, Walmart could appoint three of the eleven members of SLP's Board of Directors ("Board"), and Walmart appointed Defendants to SLP's Board—and only SLP's Board—in 2020.

Structurlam encountered production delays on the project, and by the middle of 2022, had delivered *no* timber despite the parties' agreement requiring deliveries to begin ten months earlier. But rather than terminate the contract, Walmart and Structurlam entered into a new contract in June 2022.  Structurlam faced difficulties with this second contract, too.  Indeed, right after Structurlam finally started delivering timber, it informed Walmart that the timber failed to meet

1

required fire-safety ratings.   Structurlam later believed it solved the problem, but Walmart disagreed, and in January 2023, Walmart terminated the contract pursuant to its terms.   Three months later, Structurlam, SLP, and the other Debtors filed for bankruptcy protection.

More than two years later, Plaintiff sued Defendants.  Plaintiff asserts two claims (breach of fiduciary duty and tortious interference with contract) and asserts that Defendants assisted (or failed to prevent) Walmart's alleged breach of the second agreement.  Many problems plague Plaintiff's claims.

*First*, the breach of fiduciary duty claim is time barred.  Under British Columbia law, which applies to this claim because SLP is a British Columbia corporation, the limitations period begins to run when a party discovers a claim—meaning they know or reasonably ought to know they have been harmed by another party's actions or inactions.  Plaintiff challenges Defendants' alleged actions (or inactions) between *July 2022 and January 2023* that supposedly allowed Walmart to violate the agreement with Structurlam and thus allegedly caused Debtors financial harm.  But Plaintiff did not file this lawsuit until *June 2025*—well outside the two-year limitations period. This claim thus should be dismissed as untimely.

*Second*, Plaintiff alleges no facts suggesting that Defendants breached fiduciary duties to SLP.  To start, her claim impermissibly relies on group pleading.  Indeed, Plaintiff does not identify a single act or decision Defendants allegedly made as Board members and instead lumps all Defendants together and asserts in conclusory fashion that all breached their duties.  Such vague pleading forces the Court and Defendants to guess *who* allegedly did *what* to *whom* and *when*, which fails to state a claim.  At most, Plaintiff alleges that Defendants attended "joint" board meetings between Structurlam and SLP, and Hooper and "Debtors' CEO" met to monitor "Debtors' production."  *See* Compl. ¶¶ 42, 44.  Far from supporting a claim that Defendants acted

grossly negligent (duty of care), in a self-interested way (duty of loyalty), or in bad faith (duty of good faith), Plaintiff's allegations reveal that Defendants *informed themselves* of and monitored Structurlam's work, which is exactly what is expected of directors.

*Third*, Plaintiff alleges no facts showing that Defendants owed—let alone breached—fiduciary duties to any other Debtor.  Plaintiff asserts that Defendants "effectively exercised management oversight" over Structurlam and thus owed fiduciary duties, but Plaintiff alleges no facts supporting this purported "oversight."  Simply attending unspecified board meetings cannot create a fiduciary duty, and it certainly does not show that Defendants breached any such duties.

*Finally*, Plaintiff's tortious interference claim fails because Plaintiff has not alleged each required element of that claim.  Plaintiff asserts that Defendants (Walmart employees) interfered with Structurlam's contract with Walmart.  But a party, *and its employees*, cannot interfere with its own contract.  In any event, Plaintiff alleges no facts showing *how* Defendants interfered with the agreement, much less that such alleged interference was both intentional and improper.  At most, she says Defendants "fail[ed] to act or intervene to ensure Walmart's compliance with TSA 2" (*see, e.g.*, Compl. ¶¶ 56, 63, 84)—but nonfeasance is not actionable.  Finally, Plaintiff cannot show Defendants induced Walmart to breach the supply agreement because she never alleges when or how any Defendant "assisted" in Walmart's alleged breach, or even if any Defendant knew about a purported breach.  The Complaint should be dismissed.

## III.    STATEMENT OF FACTS

### A.    Walmart Contracts With Structurlam to Help Build Walmart's Home Office

In 2019, Walmart announced plans for a new state-of-the-art home office in Bentonville, Arkansas ("Project").  *See* Complaint and Objection to Proofs of Claim Number 204 and 209 Filed

by Walmart, Inc., Adv. Case No. 25-50541 (D.I. 3) ("Walmart Compl.")[1] ¶ 6.  To construct the massive Project, Walmart needed over a million cubic feet of specialty manufactured timber.  Because Structurlam billed itself as a "leading manufacturer of mass timber," Compl. ¶ 1, Walmart selected Structurlam to supply the timber for the Project, and Walmart, Structurlam, and SLP entered into a supply contract ("TSA 1") on December 3, 2019.  Compl. ¶ 26.  Under TSA 1, Walmart agreed to purchase timber materials from Structurlam and Structurlam agreed to deliver the timber materials following a particular schedule.  *Id.*

### B.    Defendants Join SLP's Board

To ensure Structurlam had sufficient capital to manufacture the timber, Walmart invested in Structurlam's parent corporation, SLP, in exchange for approximately 34% of SLP's preferred equity.  Compl. ¶ 27.  As part of that investment, Walmart could appoint three people to SLP's eleven-member Board.  In March 2020, Walmart (or its affiliates) elected Defendants to SLP's Board.  Walmart Compl. ¶ 35; Compl. ¶ 28.  Plaintiff does not allege that Defendants served as directors for any other Debtor.  *See* Compl. ¶¶ 4, 7.

At that time, Defendants worked at Walmart:  Brian Hooper served as Vice President, Corporate Real Estate and Facilities; Cindi Marsiglio served as Senior Vice President, Corporate Real Estate; and Christine Allen served as Corporate Chief Financial Officer.  The Complaint contains very few facts about Defendants.  According to Plaintiff, Marsiglio was Walmart's "primary point of contact" for "negotiating the Project."  Compl. ¶ 32.  Hooper signed the supply

---

[1] Plaintiff cites to and relies on the Walmart Complaint to plead her claims.  *See, e.g.*, Compl. ¶¶ 2, 54.  The Walmart Complaint thus is incorporated by reference.  *See McKenzie v. Navy Fed. Credit Union*, 760 F. Supp. 3d 146, 150 (D. Del. 2024) ("In evaluating a motion to dismiss, the Court may consider documents that are attached to or submitted with the complaint . . . matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case." (internal quotation marks omitted)).

agreement for Walmart and "began to have weekly meetings" with Structurlam's CEO "in 2022" to "closely monitor" production. *Id.* ¶ 44. And, Plaintiff alleges, Defendants attended about "a dozen" joint Board meetings between SLP and Structurlam between 2020 and 2022. *Id.* ¶ 40. Plaintiff does not allege when these joint meetings specifically occurred, how (of even if) Defendants participated in the meetings, what decisions the Boards made (if any), or how Defendants voted with respect to any such decisions. *See id.* ¶¶ 41-42.

### C. Walmart and Structurlam Enter Into a New Supply Agreement, Which Walmart Later Terminates

Structurlam experienced production delays almost immediately, and by June 2022, had delivered nothing to Walmart. Walmart Compl. ¶ 7. Rather than terminate the agreement, Walmart and Structurlam entered into a new agreement called TSA 2. Compl. ¶ 29; Compl. Ex. 1 ("TSA 2") § 32. In July 2022, Walmart exercised its right under TSA 2 to request changes to the delivery schedule and accelerate the production and delivery of materials for the Project's fitness center. Compl. ¶ 54; Walmart Compl. ¶¶ 80-82. When Structurlam began delivering timber under this new schedule in Fall 2022, Structurlam discovered that the timber did not meet TSA 2's fire-rating specifications. Walmart Compl. ¶¶ 101-104; Compl. ¶ 61. So Structurlam asked for time to assess the extent of the issue and "recommended that further work on the Project be paused." Walmart Compl. ¶ 102. Concerned that these defects could undermine the quality of the Project and lead to further delays, Walmart delivered a "Notice of Defective Goods" on November 18, 2022, and suspended further acceptance of products until Structurlam could certify that the products complied with TSA 2's safety requirements. *Id.* ¶ 106.

Later, when Structurlam failed to satisfy Walmart that the timber complied with TSA 2's safety requirements, Walmart sent Structurlam a "Notice of Default." *Id.* ¶ 138; Compl. ¶ 62. And

when Structurlam failed to cure the defect, Walmart terminated TSA 2 on January 11, 2023. Walmart Compl. ¶ 156; Compl. ¶ 67.  Plaintiff asserts that the termination "prove[d] financially ruinous" to Structurlam.  Compl. ¶¶ 57, 59, 61-62, 64, 67-68; *see also* Walmart Compl. ¶ 156. Plaintiff does not allege that Defendants directed or participated in Walmart's decision to terminate TSA 2.

### D.    Debtors File For Bankruptcy and File This Lawsuit More Than Two Years Later

On April 21, 2023, Debtors filed for Chapter 11 bankruptcy.  Compl. ¶ 70.  Two years later, in April 2025, Plaintiff sued Walmart for breach of contract and allegedly tortious conduct. That lawsuit remains pending.  More than two months after suing Walmart—and now two-and-a-half years after Debtors filed for bankruptcy—Plaintiff sued Defendants.  Plaintiff asserts a breach of fiduciary duty claim against Defendants, claiming they owed and breached duties to the "Debtors" by, among other things, "failing to act or intervene" to stop Walmart's supposed "unreasonable" "performance demands under TSA 2."  *Id.* ¶¶ 75-76.  Plaintiff contends this same conduct constitutes tortious interference with TSA 2.  *Id.* ¶¶ 83-85.

## IV.    ARGUMENT

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), made applicable to this proceeding through Rule 7012 of the Federal Rules of Bankruptcy Procedure, a complaint must contain sufficient factual matter, accepted as true, "to show that the plaintiff has a plausible claim for relief."  *In re JC USA, Inc.*, Adv. Pro. No. 25-50002 (JKS), 2025 WL 2354184, at *3 (Bankr. D. Del. Aug. 13, 2025).  "Under this pleading standard, a complaint must nudge claims across the line from conceivable to plausible."  *Id.* (internal quotation marks omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). This standard requires "more than a sheer possibility that a defendant acted unlawfully." *Id.* Indeed, two "working principles" underlie a "plausible" claim: first, "the tenet that a court must accept as true all of the allegations contained in a complaint" does not apply to legal conclusions. *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Second, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not show[n]—that the pleader is entitled to relief" and the complaint should be dismissed. *Id.* at 679 (internal quotation marks omitted).

As explained below, Plaintiff fails this pleading test because she alleges conclusions (not facts) that "Defendants" (collectively) breached fiduciary duties to the "Debtors" and tortiously interfered with TSA 2. Compl. ¶¶ 76, 84. The Complaint should be dismissed.

### A.      Plaintiff's Breach of Fiduciary Duty Claim Should Be Dismissed

Plaintiff claims that Defendants breached fiduciary duties to the "Debtors"—SLP, Structurlam, Natural Outcomes, LLC ("Natural"), and Structurlum Mass Timber Corporation ("SMTC")—by failing to ensure Walmart's compliance with TSA 2 and assisting Walmart in its breach of that agreement. Compl. ¶ 76. Plaintiff's theory fails for at least three reasons, any of which requires dismissal.

*First*, Plaintiff's claim is time-barred under the applicable two-year statute of limitations because Plaintiff brings this suit more than two years after Debtors discovered their claim. *Second*, Plaintiff pleads no facts showing Defendants breached their fiduciary duties to SLP. Indeed, Plaintiff fails to allege *what* actions *each* Defendant allegedly took and *when*, or *how* such unspecified actions breach the duties of care, loyalty, and good faith. *Finally*, Plaintiff's claim

that Defendants breached duties to other Debtors fails because Plaintiff does not and cannot show that Defendants owed fiduciary duties to those Debtors—much less that any Defendant breached any such duties.

### 1.    Plaintiff's Breach of Fiduciary Duty Claim Is Time-Barred

The breach of fiduciary duty claim should be dismissed as untimely because Plaintiff filed suit more than two years after Debtors discovered their claim.    Under British Columbia's Limitation Act, which applies since SLP is a British Columbia corporation, a breach of fiduciary duty "claim must not be commenced more than 2 years after the day on which the claim is discovered."    Province of British Columbia Limitation Act ("Limitation Act"), S.B.C. 2012, c 13, § 6(1) (Can.); *see also In re MTE Holdings LLC*, Adv. Pro. No. 21-51255 (CTG), 2024 WL 3272224, at *9 (Bankr. D. Del. July 1, 2024) (finding that the internal affairs doctrine provides that the place of incorporation determines the law applicable to a breach of fiduciary duty claim). Plaintiff's own allegations show that the Debtors discovered their claim more than two years before commencing this action.

Plaintiff filed the Complaint on *June 24, 2025*—meaning her claim is presumptively time-barred if any of the "Debtors" discovered it before *June 24, 2023*.    A party "discovers" a claim when the "person knew or reasonably ought to have known" that (a) "injury, loss or damage had occurred," (b) because of "an act or omission," (c) by the "person against whom the claim is or may be made," (d) that could be remedied in "a court proceeding."    Limitation Act, S.B.C. 2012, c 13, § 8.    According to Plaintiff, Defendants breached fiduciary duties to Debtors by "failing" to ensure Walmart's compliance with TSA 2 and "assist[ing]" Walmart in its "unreasonable modifications to and performance demands under" that agreement.    Compl. ¶ 76.    As a result,

Debtors allegedly "suffer[ed] substantial financial injuries." *Id.* ¶ 78. By Plaintiff's own admission, each of those events occurred in or before January 2023:

- **July 2022**: Defendants "served the interest of [Walmart]" and not "the best interest of Debtors" when they allowed Walmart to "materially alter[]" TSA 2 and make "unreasonable demands," which "severely undermined [Structurlam's] ability to operate," *id.* ¶¶ 54-56;

- **October 2022**: Defendants "disregarded Debtors' best interests" in violation of their fiduciary duties when they allowed Walmart to "refuse[]" to accept delivery of the manufactured goods, which "forced Structurlam to suspend production," *id.* ¶¶ 59-60;

- **November-December 2022**: Defendants "knew" Walmart "refus[ed] to abide by" TSA 2 but allowed Walmart to serve "Notice[s] of Defective Goods" and "Default," which "caus[ed] Structurlam to experience severe economic and liquidity distress," *id.* ¶¶ 61-63;

- **Late-2022**: Defendants were "aware" that Walmart was "sourcing Goods from other suppliers" in "direct violation of the exclusivity terms of TSA 2," yet "still permitted Debtors to continue producing these same Goods, to [Debtors'] own detriment," *id* ¶¶ 64-66; and

- **January 2023**: Walmart served Structurlam a "Notice of Termination," which Defendants knew was "without basis" and would—and allegedly did—"prove financially ruinous," yet failed to stop Walmart from issuing the notice, *id.* ¶¶ 67-69.

Debtors thus "discovered" their claim against Defendants no later than January 2023. *See Grant Thornton LLP v. New Brunswick*, 2021 SCC 31 at paras. 42, 51-62 (Can.) (plaintiff discovered claim against auditor when it received report showing auditor failed to follow generally accepted accounting principles when preparing financials). And at the very latest, Debtors learned of their claim by April 21, 2023, when Defendants' alleged breach of fiduciary duty supposedly led to "Debtors' financial distress and insolvency, and ultimately led to Debtors' bankruptcy." Compl. ¶¶ 12, 70, 78. Plaintiff did not file this lawsuit until June 24, 2025, more than two years after Debtors discovered the claim. The claim is thus time-barred. *See Arbutus Inv. Mgmt. Ltd. v. Russell*, 2022 BCSC 72 at para. 105 (Can.) (finding claims untimely where "any damage to its business presumably occurred and became discoverable" before two-year limitation period).

Bankruptcy Code Section 108(a) supports this conclusion.  That Section requires a trustee to bring a claim before the later of:  (1) the end of the existing statute of limitations period (January 2025); or (2) two years after the order for relief (petition date) (April 2025).  *See* 11 U.S.C. § 108(a); *Baker v. Bank of Am., N.A.*, No. 16 Civ. 488, 2016 WL 9409022, at *3 (S.D.N.Y. Oct. 31, 2016) (Section 108(a) inapplicable after two-year extension from petition date expires). Because Plaintiff did not bring this lawsuit until June 2025, the limitations period has expired.  The fiduciary-duty claim thus should be dismissed with prejudice.

### 2.    Plaintiff Fails to Allege That Defendants Breached a Fiduciary Duty

Even if timely, Plaintiff fails to adequately allege that any Defendant breached any fiduciary duty.  As explained above, the internal affairs doctrine requires that claims asserting a breach of fiduciary duty be decided by looking to the laws of the place of incorporation—here, British Columbia.  *See* Section IV.A.1., *supra*.  Under British Columbia law, fiduciaries "are held to essentially the same standard as claims under Delaware law."  *In re: Old BPSUSH, Inc.*, Adv. Pro. No. 19-50726 (BLS), 2021 WL 4453595, at *17 (D. Del. Sept. 29, 2021) ("*In re Old BPSUSH II*") (affirming dismissal of fiduciary duty claims under British Columbia law for same reasons as Delaware law).  Under Delaware law, "[t]he elements of a breach of fiduciary duty claim are (1) a fiduciary duty exists and (2) that the fiduciary breached that duty."  *In re Tropicana Ent., LLC*, 520 B.R. 455, 470 (Bankr. D. Del. 2014).  The recognized fiduciary duties under Delaware law include the duties of care, loyalty, and good faith.  *In re Fedders N. Am. Inc.*, 405 B.R. 527, 539 (Bankr. D. Del. 2009).  While Plaintiff asserts breaches of all three duties, her claim fails at a threshold level because she impermissibly lumps "Defendants" together without identifying how each Defendant acted wrongfully or caused harm.  The Complaint must also be dismissed because

it fails to allege facts showing how Defendants, three members of SLP's eleven-person Board, breached their duties of care, loyalty, or good faith to SLP.

### a.    Plaintiff Improperly Relies on Group Pleading

Plaintiff's claim fails in the first instance because she impermissibly relies on group pleading.  Even under the most liberal pleading standards, "a plaintiff must differentiate between defendants."  *Burtch v. Zachem*, Adv. Pro. No. 22-50255 (TMH), 2023 WL 6140247, at *3 (Bankr. D. Del. Sept. 19, 2023).  Plaintiff names three Defendants but alleges no facts showing how each acted wrongfully.  Instead, she lumps them together and asserts in conclusory fashion that "Defendants" took actions (or failed to act), which caused "Debtors" harm.  *E.g.*, Compl. ¶¶ 77-78; *see also id.* ¶ 76 ("Defendants knew or should have reasonably known during the negotiation and duration of TSA 2 that Walmart's actions would financially destroy Debtors.").  Similarly, Plaintiff asserts without factual support that "Defendants" gained "insight into Debtors' financial situation" and that, as "Debtors' directors," "Defendants" thus "were intimately involved in the Project."  Compl. ¶¶ 46, 53; *see also, e.g., id.* ¶ 45 ("Defendants insisted on joining weekly subcommittee calls" on which "confidential information" about the Project "was discussed").  In so pleading, Plaintiff "forces both the Defendants and the Court to guess *who* did *what* to *whom* and *when*"—which does not state a claim.  *Zachem*, 2023 WL 6140247, at *3-4 (dismissing complaint for group pleading); *see also, e.g., Genworth Fin., Inc. Consol. Deriv. Litig.*, No. 11901-VCS, 2021 WL 4452338, at *22 (Del. Ch. Sept. 29, 2021) (dismissing breach of fiduciary duty claim where complaint made "no specific allegations" against defendants).

### b.    Plaintiff Fails to Allege a Breach of the Duty of Care

Plaintiff asserts that Defendants owed SLP "a duty of care," but she does not allege facts showing that any Defendant breached that duty.  Compl. ¶¶ 6, 47.  The duty of care requires

directors to "use that amount of care which ordinarily and careful prudent [persons] would use in similar circumstances" and "consider all material information reasonably available" when acting on the company's behalf. *In re Old BPSUSH, Inc.*, Adv. Pro. No. 19-50726 (BLS), 2020 WL 6818435, at *8 (Bankr. D. Del. June 30, 2020) ("*In re Old BPSUSH I*"), *aff'd, In re Old BPSUSH II*, 2021 WL 4453595. Plaintiff alleges no facts suggesting any Defendant breached this duty; in fact, she does not identify "any decisions" Defendants "actually made." *In re AgFeed U.S., LLC*, 546 B.R. 318, 329-30 (Bankr. D. Del. 2016) (dismissing duty of care claim where "complaint does not identify any decisions [defendant] actually made," nor did it "address how any of [defendant's] actions, or failure to act, were grossly negligent").

Even if Plaintiff could point to a decision Defendants made on SLP's behalf, those decisions would be protected by the business-judgment rule. Under this standard, courts presume directors "act on an informed basis and in the honest belief that the action taken was in the best interests of the company." *In re Space Case*, Adv. Pro. No. 23-50748 (BLS), 2024 WL 1628440, at *5 (Bankr. D. Del. Apr. 15, 2024); *see also Peoples Dep't Stores Inc. v. Wise*, 2004 SCC 68 at para. 67 (Can.) (same). To overcome the deferential business judgment rule, *Aronson v. Lewis*, 473 A.2d 805, 812 (Del. 1984), Plaintiff must allege that Defendants acted "grossly negligent with respect to the affairs of the corporation," *In re Old BPSUSH I*, 2020 WL 6818435, at *11. Unlike ordinary negligence, gross negligence is an "extreme departure from the ordinary standard of care." *In re Old BPSUSH II*, 2021 WL 4453595, at *8. To meet this standard at the pleading stage, Plaintiff had to allege facts that "plausibly showed" Defendants were "recklessly uninformed" or acted "outside of the bounds of reason." *Id.* (citations omitted).

Plaintiff alleges the opposite of "gross negligence." *In re Fedders*, 405 B.R. at 540 ("[G]ross negligence . . . requires directors and officers to fail to inform themselves fully and in a

deliberate manner.").  Instead, Plaintiff alleges Defendants *informed themselves* about TSA 2 and "Debtors' progress" towards complying with that agreement.  Compl. ¶ 45.  According to Plaintiff, Defendants attended meetings with Structurlam's board and discussed "delivery" of the products, "budget and finances," and "coordination with Walmart."  *Id.* ¶ 42.  Hooper also "closely monitor[ed] Debtors' production" through meetings with CEO.  *Id.* ¶ 44.  Such diligence falls within "the bounds of reason" and thus cannot be grossly negligent.  *In re Old BPSUSH I*, 2020 WL 6818435, at *9, *13 (dismissing claim where board started an investigation and "sought advice" from "outside professionals"); *see also Peoples Dep't Stores*, 2004 SCC 68 para. 68 (Can.) (implementation of new policy was a "reasonable business decision that was made with a view to rectifying a serious and urgent business problem").

### c.     Plaintiff Fails to Allege Breaches of the Duties of Loyalty and Good Faith

Plaintiff also fails to allege facts showing that Defendants breached their duties of loyalty and good faith.  The duty of loyalty requires directors and officers to "act honestly and in good faith with a view to the best interests of the corporation."  Canada Business Corporations Act, R.S.C. 1985 c C-44, § 122.  To state a claim, which is "notably—and intentionally—difficult" to assert, Plaintiff must allege facts showing that Defendants either (1) "stood on both sides of the transaction and dictated its terms in a self-dealing way, or (2) received in the transaction a personal benefit that was not enjoyed by the shareholders generally."  *In re Cred Inc.*, 650 B.R. 803, 830 (Bankr. D. Del. 2023), *aff'd*, 658 B.R. 783 (D. Del. 2024).  Plaintiff alleges neither.

To start, Plaintiff alleges no facts suggesting that any Defendant "received any personal benefit" from any transaction.  *Id.* at 831.  And while Plaintiff notes that Defendants worked at Walmart while they served as SLP directors (Compl. ¶ 76), "[t]his is not enough" to plead a duty

of loyalty breach. *In re Cred Inc*., 650 B.R. at 830-31 ("The mere fact that [defendant] sat on the boards of two companies on opposite sides of a transaction does not establish that the transaction was self-interested."). Plaintiff alleges no *facts* showing how *each* Defendant "participated in [TSA 2] negotiations" on Walmart's behalf, let alone that they "dictated its terms in a self-dealing way." *Id*.; *see also In re AgFeed*, 546 B.R. at 331 (dismissing loyalty claim due to lack of facts showing defendants "had any role" in challenged conduct).

On the contrary, the Complaint includes just three factual allegations that mention Defendants by name—two noting that Hooper signed TSA 2 for Walmart and attended "weekly meetings" with Structurlam's CEO at some unspecified time in 2022 (Compl. ¶¶ 31, 44), one stating that Marsiglio was the "primary point of contact at Walmart for negotiating the Project" (*id*. ¶ 32), and none about Allen. Not one of these allegations shows that Defendants "dictated" the terms or "otherwise exerted any level of control" over negotiations in a way that harmed SLP. *In re Cred Inc*., 650 B.R. at 830-31; *see also* Compl. ¶¶ 19-21. For example, Plaintiff alleges no facts about what Hooper and Structurlam's CEO discussed at the weekly meetings, let alone that Hooper "dictated" terms that benefitted Walmart and harmed SLP. *See In re Cred Inc.*, 650 B.R. at 830-31. Without such facts, a board member meeting with a subsidiary entity's CEO suggests not a breach of duty but normal (and expected) Board oversight.

Plaintiff's good faith claim fares no better. This duty is a "subsidiary element of the duty of loyalty"; to plead a breach, Plaintiff must allege "conduct motivated by a subjective bad intent," or an "intentional dereliction of duty or the conscious disregard for one's responsibilities." *In re Old BPSUSH I*, 2020 WL 6818435, at *10. Plaintiff, again, alleges neither. The most she musters is that Defendants "us[ed] their knowledge" about "[Structurlam's] financial position" to aid Walmart in imposing "unreasonable" demands under TSA 2. Compl. ¶¶ 39-40, 76. But Plaintiff

alleges no facts identifying *what* Defendants specifically learned, *when* they learned it, or *how* they used the information to SLP's detriment.  *In re Old BPSUSH I*, 2020 WL 6818435, at *11 (allegations that defendants "misrepresented the existence" of a contract that caused company to fail an audit insufficient to show defendants acted fraudulently or intended to harm the company).

Conceding as much, Plaintiff asserts repeatedly that Defendants gathered "extensive information" about Structurlam's financial position that "could aid Walmart" and used "their knowledge to assist Walmart in its insistence on unreasonable modifications to and performance demands under TSA 2."  *See* Compl. ¶¶ 56, 58, 60, 63, 65, 68, 76.  But Plaintiff identifies no facts showing *any* Defendant used *any* "information" at *any* time to "assist Walmart."  In fact, Plaintiff alleges the opposite; that Defendants tried to keep the Project *on track* by monitoring Structurlam's progress and "compliance with" TSA 2.  *Id.* ¶ 42.  Plaintiff's speculation "is plainly inconsistent" with *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), "which advises courts to reject conjecture (i.e., speculation) when ruling on a motion to dismiss."  *In re Old BPSUSH II*, 2021 WL 4453595, at *14; *see also Yucis v. Sears Outlet Stores, LLC*, 813 F. App'x 780, 785 n.8 (3d Cir. 2020) (rejecting allegations that are "so general as to be conclusory, and [are] thus not entitled to the presumption of truth on a motion to dismiss"); *Meng Estate v. Liem*, 2019 BCCA 127 at paras. 37-38 (Can.) (dismissing claim without "evidence to suppose that [defendant] acted dishonestly or in the face of a conflict of interest, thwarted the wishes of the [plaintiffs], preferred his interests to theirs, or in any way benefitted from signing the contract").

### 3.   Plaintiff Fails to Allege Defendants Owed and Breached Fiduciary Duties to Any Other Debtor

Plaintiff asserts that "[b]y virtue of their roles as directors of the Debtors, Defendants owed fiduciary duties to the Debtors."  Compl. ¶ 73.  Plaintiff concedes, however, that Defendants served

as directors at *only one* of the four Debtors, SLP. *Id.* ¶¶ 4, 7. Indeed, aside from listing two of the Debtor companies (Natural and SMTC) in a footnote, the Complaint does not mention them at all. *Id.* at 1; *see Zachem*, 2023 WL 6140247, at *4 (dismissing claims challenging conduct against "Debtors" because plaintiffs may not "collapse[] the Debtors" into a single term to plead claims). As for the remaining company, Structurlam, Plaintiff asserts that Defendants "effectively exercised management oversight" with authority "equal to or greater than" its "formally recognized directors" and thus owed Structurlam a "duty of care, loyalty, and good faith." Compl. ¶ 7. But Plaintiff alleges no facts showing when or how any Defendant exercised any management oversight over Structurlam, much less oversight comparable to or greater than Structurlam's directors (none of whom Plaintiff identifies). *See* Section IV.A.2.a., *supra*.

At most, Plaintiff notes that Defendants "attended joint board meetings" between SLP's and Structurlam's boards between 2020 and 2022 and participated in "subcommittee calls" to discuss "[Structurlam's] work for Walmart" and "matters relating to Debtors' production." Compl. ¶¶ 8, 40-42, 45. Again, Plaintiff alleges no facts suggesting that Defendants did anything besides attend meetings, which falls far short of the "actual domination and control" needed to impose a fiduciary duty. *In re PennySaver USA Publ'g LLC*, 587 B.R. 445, 464-65 (Bankr. D. Del. 2018) (dismissing fiduciary duty claim against nondirector who did not "cause" company to make fraudulent transfers); *see also Witmer v. Armistice Cap. LLC*, No. 2022-0807-MTZ, 2025 WL 2350799, at *10 (Del. Ch. Aug. 14, 2025) (plaintiff failed to show defendant controlled transaction where he alleged "only [defendant's] presence at board meetings"). Indeed, "bare conclusory" allegations like Plaintiff's that Defendants "possessed control" are "insufficient" and should be dismissed. *Lewis v. AimCo Props., L.P.*, No. 9934-VCP, 2015 WL 557995, at *6-7 (Del. Ch. Feb. 10, 2015). Nor can Plaintiff create a fiduciary duty through Defendants' service on

SLP's board, which held 100% of Struturlam's equity.  Compl. ¶ 27.  Directors of "a parent corporation do[] not owe fiduciary duties to its wholly-owned subsidiaries."  *See Trenwick Am. Litig. Tr. v. Ernst & Young, L.L.P.*, 906 A.2d 168, 191, 194 (Del. Ch. 2006) (dismissing claim where plaintiff "has not explained how the Trenwick directors . . . can be deemed to be a 'controlling stockholder' group that owes fiduciary duties to a subsidiary"), *aff'd sub nom. Trenwick Am. Litig. Tr. v. Billett*, 931 A.2d 438 (Del. 2007).

Yet even if Plaintiff adequately alleged that Defendants owed Structurlam fiduciary duties, Defendants are "immunize[d]" from liability arising from any breach of the duty of care under Structurlam's articles of incorporation.  *See In re HH Liquidation, LLC*, 590 B.R. 211, 272-73 (Bankr. D. Del. 2018) (finding "exculpatory clauses" immunized defendants from claims for breach of the duty of care) (citing *Stone v. Ritter*, 911 A.2d 362, 369-70 (Del. 2006)); *see also* Weber Decl., Ex. 1 at art. 8.[2]  Those articles provide that to the "fullest extent permitted by Delaware statutory or decisional law, as amended or interpreted, no director of this Corporation shall be personally liable to the Corporation . . . for monetary damages for breach of fiduciary duty as a director."  Weber Decl., Ex. 1 at art. 8.

## B.    Plaintiff's Tortious Interference Claim Should Be Dismissed

Plaintiff fails to state a tortious interference claim under Arkansas law, which applies for two reasons.  First, Arkansas has the "most significant relationship" to this case.  *Am. Bottling Co. v. BA Sports Nutrition, LLC*, No. N19C-03-048 AML CCLD, 2021 WL 6068705, at *16-17 (Del.

---

[2] The Court can and should take judicial notice of Structurlam's Articles of Incorporation, filed with the Delaware Department of State, in deciding this Motion.  *See* Fed. R. Evid. 201; *In re Essar Steel Minnesota LLC*, No. 16-11626 (BLS), 2019 WL 2246712, at *8 n.11 (Bankr. D. Del. May 23, 2019) (taking judicial notice of company's articles of incorporation because the court may take judicial notice of facts that "can be 'determined from sources whose accuracy cannot reasonably be questioned'" (internal citations omitted)).

Super. Ct. Dec. 15, 2021) (Delaware courts apply the "most significant relationship" test for analyzing choice-of-law). The contract at issue relates to a construction project *in Arkansas* using materials manufactured *at an Arkansas facility*. Compl. ¶¶ 26, 42; *see also Am. Bottling Co.*, 2021 WL 6068705, at *16-17 (finding Delaware law applied when parties' relationship revolved around Delaware). Second, beyond this connection to the state, TSA 2 states that Arkansas law governs "all disputes arising" under TSA 2 or "relating thereto, whether sounding in contract or tort." TSA 2 § 31; *see also Vichi v. Koninklijke Philips Elecs. N.V.*, 62 A.3d 26, 45 (Del. Ch. 2012*)* ("Delaware Courts will honor a contractually-designed choice of law provision so long as the jurisdiction selected bears some material relationship to the transaction.").

To state a tortious-interference claim under Arkansas law, Plaintiff must allege: (1) the existence of a valid contract; (2) Defendants' knowledge of the contract; (3) intentional interference inducing or causing a breach or termination of the contract; and (4) resultant damage to Plaintiff. *Faulkner v. Ark. Child.'s Hosp.*, 69 S.W.3d 393, 405 (Ark. 2002). Plaintiff must also allege that the interference was "improper" and that a third party participated in the alleged interference. *Id*. Plaintiff has not met her pleading burden for at least four reasons.

*First*, Plaintiff pleads no **"third-party"** involvement and thus fails to allege an "essential" element of her claim. *Steinbuch v. Univ. of Ark.*, 589 S.W.3d 350, 360-61 (Ark. 2019). Plaintiff asserts that Defendants intentionally interfered with TSA 2—a contract between Structurlam and Walmart. But Plaintiff also alleges that Defendants, "[a]t all times relevant to this adversary proceeding," were "senior executives *at Walmart*." Compl. ¶ 4 (emphasis added). Under Arkansas law, a "party to a contract and its employees and agents, acting within the scope of their authority, cannot be held liable for interfering with the party's own contract." *Faulkner*, 69 S.W.3d at 405. Plaintiff alleges no facts suggesting Defendants acted "outside" their authority for Walmart. *See*

*Oak Creek Inv. Props., Inc. v. Am. Elec. Power Serv. Corp.*, No. 4:18-CV-4009, 2020 WL 759929, at *7 (W.D. Ark. Feb. 14, 2020).   On the contrary, Plaintiff asserts that Defendants prioritized "Walmart's business to the detriment of Debtors' business."  Compl. ¶ 10.  Plaintiff thus cannot assert that Defendants—Walmart employees—tortiously interfered with a Walmart contract.  *See Faulkner*, 69 S.W.3d at 405-06 (affirming dismissal where defendant was employed at contracting party).  The result is the same under Delaware law.  *See, e.g.*, *World Energy Ventures, LLC v. Northwind Gulf Coast LLC*, No. N15-C-03-241 WCC, 2015 WL 6772638, at *10 (Del. Super. Ct. Nov. 2, 2015) (dismissing because party "cannot be held liable for 'interfer[ing] with its own contract'" (citation omitted)).

*Second*, Plaintiff does not "specify the wrongful actions of the specific Defendants" and instead lumps them all together.  *In re Zohar III, Corp.*, Adv. Pro. No. 20-50776 (KBO), 2021 WL 3124298, at *12 (D. Del. July 23, 2021); *see also* Section IV.A.2.a., *supra*.  Indeed, Plaintiff alleges that "Defendants" failed to "act or intervene to ensure Walmart's compliance with TSA 2" and assisted "Walmart in its insistence on unreasonable modifications" to the contract.  *E.g.*, Compl. ¶¶ 58, 60, 63.  Such group pleading again leaves the Court "guessing which Defendant did what particular act" and thus fails to state a claim.  *Zohar*, 2021 WL 3124298, at *12; *see also Smith v. Ark. Highway Police*, No. 4:13CV00301 JLH, 2013 WL 12320409, at *8 (E.D. Ark. Oct. 7, 2013) (dismissing claim against individual defendants where complaint made "no allegation that an individually named defendant interfered" with contractual advantage).

*Third*, Plaintiff alleges no "interference," much less "intentional" and "improper" interference.  In fact, other than noting that Defendants attended certain Board or subcommittee meetings, Plaintiff alleges no facts about what Defendants did or when they did it.  Instead, Plaintiff asserts that Defendants *failed* to "act or intervene to ensure Walmart's compliance with

TSA 2" so as not to "wreak financial ruin upon Debtors." Compl. ¶ 68. But under Arkansas law, a failure to act, or "nonfeasance," is not actionable. *Alvarado v. St. Mary-Rogers Mem'l Hosp., Inc.*, 257 S.W.3d 583, 587 (Ark. Ct. App. 2007) (affirming dismissal of tortious-interference claim where defendant allegedly failed to act). In any event, that Defendants attended certain meetings fails to show an intent to interfere with a contract. *See Wallace v. Baylouny*, No. 1:16-cv-0047, 2016 WL 3059996, at *7 (E.D. Va. May 31, 2016) (dismissing tortious interference claim where plaintiff alleged only that defendant "was in attendance" at a meeting and "did not respond to an email").

Likewise, Plaintiff alleges no facts that any Defendant acted "improperly." *See Mountain Home Flight Serv., Inc. v. Baxter Cnty.*, No. 3:12-CV-03027, 2012 WL 2339722, at *5 (W.D. Ark. June 19, 2012) (dismissing where complained-of conduct was "not improper"). In analyzing whether alleged conduct was "improper," the Court considers Defendants' alleged motives and interests. *See Oak Creek Inv.*, 2020 WL 759929, at *9. Plaintiff neither alleges that Defendants were financially motivated to interfere with TSA 2 nor that they stood to benefit personally from interfering. *See id.* (speculation based on resulting loss from termination insufficient). Just the opposite, Plaintiff suggests Defendants would be harmed if Debtors suffered financially: Walmart held 34% of SLP's preferred equity interest, which in turn owned 100% of Structurlam. As Walmart employees and SLP directors who supposedly knew that "Walmart's termination of TSA 2 would prove financially ruinous to Debtors" (Compl. ¶ 68), TSA 2's termination would harm Defendants, too. Again, the result is the same under Delaware law. *See Aclate, Inc v. Eclipse Mktg. LLC*, No. 20-576-RGA, 2020 WL 6158579, at *4 (D. Del. Oct. 21, 2020) (dismissing for failure to allege improper conduct).

*Finally,* Plaintiff alleges no facts that Defendants "induced" Walmart to breach TSA 2. Plaintiff asserts that Defendants "assist[ed]" Walmart in making "unreasonable modifications to and performance demands under TSA 2" (Compl. ¶ 84), but Plaintiff never alleges when or how any Defendant "assisted," or even if any Defendant knew about the purported "modifications" or "performance demands."  *See* Section IV.A.3, *supra*; *Mountain Home Flight Serv.*, 2012 WL 2339722, at *5 (dismissing complaint where complained-of conduct "cannot be said to have induced or caused a breach" of contract).  Such bare "[c]onclusions without the necessary factual underpinnings to support them are not enough to state a cause of action."  *Hunt v. Riley*, 909 S.W.2d 329, 332 (Ark. 1995).  That is true, too, under Delaware law.  *See CRE Niagara Holdings, LLC v. Resorts Grp., Inc.*, No. N20C-05-157 PRW CCLD, 2022 WL 1749181, at *13–14 (Del. Super. Ct. May 31, 2022) (dismissing for failing to allege "facts showing [defendant] *actually did* procure a breach of contract" instead of alleging the "*ability* to procure a breach").

## V.    CONCLUSION

Defendants ask the Court to dismiss Plaintiff's complaint with prejudice.

OF COUNSEL:

**LATHAM & WATKINS LLP**

Sean M. Berkowitz (*pro hac vice*)
Nicholas J. Siciliano (*pro hac vice*)
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone: (312) 876-7700
sean.berkowitz@lw.com
nicholas.siciliano@lw.com

Whitney B. Weber (*pro hac vice*)
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Telephone: (415) 391-0600
whitney.weber@lw.com

Dated:  September 17, 2025

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

By:  /s/ *Michael R. Nestor*
Michael R. Nestor (No. 3526)
Elena C. Norman (No. 4780)
Christopher M. Lambe (No. 6846)
1000 North King Street
Wilmington, DE 19801
Telephone: (302) 571-6600
mnestor@ycst.com
enorman@ycst.com
clambe@ycst.com

*Attorneys for Defendants Brian Hooper,
Cindi Marsiglio, and Christine Allen*