## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| STRUCTURLAM MASS TIMBER U.S., | : | Case No. 23-10497 (CTG) |
| INC., *et al.*, | : | |
| | : | Jointly Administered |
| Debtors.[1] | : | |

|  |  |  |
|---|---|---|
| HEATHER L. BARLOW AS LIQUIDATING | : | |
| TRUSTEE OF THE STRUCTURLAM | : | |
| LIQUIDATING TRUST, | : | |
| | : | |
| Plaintiff, | : | Adv. Case No. 25-51040-CTG |
| | : | |
| -against- | : | |
| | : | |
| BRIAN HOOPER; CINDI MARSIGLIO; | : | |
| AND CHRISTINE ALLEN, | : | |
| | : | |
| Defendants. | : | |

## PLAINTIFF'S MEMORANDUM OF LAW IN RESPONSE TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtors' federal tax identification number or Canadian business number, as applicable, include:  Structurlam Mass Timber U.S., Inc. (6287); Natural Outcomes, LLC (n/a); Structurlam Mass Timber Corporation (5050); and SLP Holdings Ltd. (3114) (collectively, "Debtors" or "Structurlam").  The location of the Debtors' headquarters is:  2176 Government Street, Penticton, British Columbia, V2A 8B5, Canada.  The address of the registered agent for Structurlam Mass Timber U.S., Inc. is:  8 The Green, Suite A, Dover, Delaware 19901.

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................................ iii

I.  NATURE AND STAGE OF PROCEEDINGS ................................................................ 1

II.  SUMMARY OF ARGUMENT ....................................................................................... 1

III.  STATEMENT OF FACTS .............................................................................................. 2

    A.  Walmart and Structurlam Enter into TSA 1 ............................................................ 2

    B.  Walmart and Structurlam Enter into TSA 2 ............................................................ 3

    C.  Defendants' Intricate Involvement in the Project .................................................... 4

    D.  Walmart Fails to Meet Its Obligations Under TSA 2 ............................................... 5

    E.  Walmart Terminates TSA 2 to Debtors' Detriment Following Defendants' Wrongful Conduct .................................................................................................... 6

IV.  ARGUMENT .................................................................................................................. 6

    A.  Standard of Review .................................................................................................. 6

    B.  The Trustee's Breach of Fiduciary Duty Claim Is Timely and Sufficiently Pled and Should Not Be Dismissed .......................................................................................... 7

        1.  The Trustee's Breach of Fiduciary Duty Claim Is Not Time Barred ................ 7

            a)  The Internal Affairs Doctrine Does Not Apply to Procedural Issues Such as the Statute of Limitations ................................................................. 8

            b)  British Columbia Has Little to Do with This Case ................................... 9

        2.  The Trustee Sufficiently Alleged That Defendant Directors Breached Their Fiduciary Duties ............................................................................................... 11

            a)  The Complaint Adequately Alleges Breaches of the Duties of Loyalty and Good Faith ...................................................................................... 12

                i)  Duty of Loyalty ........................................................................... 12

                ii)  Duty of Good Faith ..................................................................... 15

            b)  The Complaint Adequately Alleges Breach of the Duty of Care ........... 16

4936-6184-0250 v1

          c)     The Trustee Sufficiently Alleges That Defendants Owed and Breached Fiduciary Duties to Structurlam U.S. ...................................................... 18

          d)     The Trustee Did Not Improperly Group Plead ...................................... 21

C.    The Trustee's Tortious Interference Claim Is Sufficiently Pled and Should Not Be Dismissed ............................................................................................................ 24

D.    If the Court Is Inclined to Grant Relief to Defendants, It Should Deny Defendants' Motion to Dismiss and Allow the Trustee to Amend Under Rule 15 ..................... 28

V.    CONCLUSION .............................................................................................................. 28

4936-6184-0250 v1

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Abound Solar Mfg.*,
  547 B.R. 611 (Bankr. D. Del. 2016) ........................................................................................11

*In re AgFeed*,
  546 B.R. 318 (Bankr. D. Del. 2016) ...................................................................................14, 16

*In re AMC Inv'rs*,
  656 B.R. 95 (D. Del. 2024) .....................................................................................................11

*Arnold v. Society for Savings Bancorp.*,
  650 A.2d 1270 (Del. 1994) ......................................................................................................20

*In re Art Inst. of Phila.*,
  No. 18-11525, 2022 WL 18401591 (Bankr. D. Del. Jan. 12, 2022)..........................................8

*In re Autobacs Strauss*,
  473 B.R. 525 (Bankr. D. Del. 2012) .........................................................................................7

*B.E. Cap. Mgmt. Fund LP v. Fund.com Inc.*,
  171 A.3d 140 (Del. Ch. 2017)...................................................................................................8

*Baptist Health v. Murphy*,
  373 S.W.3d 269 (Ark. 2010)....................................................................................................26

*In re Bayou Steel BD Holdings, L.L.C.*,
  651 B.R. 179 (Bankr. D. Del. 2023) .......................................................................................16

*Bhole, Inc. v. Shore Invs.*,
  67 A.3d 444 (Del. 2013) ..........................................................................................................24

*Buchwald Cap. Advisors v. Schoen (In re OPP Liquidating)*, Adv. No. 21-50431
  (MFW), 2022 WL 774063 (Bankr. D. Del. Mar. 14, 2022) ....................................................21

*Burtch v. Zachem*,
  Adv. No. 22-50255 (TMH), 2023 WL 6140247 (Bankr. D. Del. Sept. 19,
  2023) .............................................................................................................................23, 24, 28

*In re BYJU's Alpha, Inc.*,
  661 B.R. 109 (Bankr. D. Del. 2024) ........................................................................................11

*California Safe Soil, v. KDC Agribusiness*,
  No. 2021-0498-MTZ, 2025 WL 98479 (Del. Ch. Jan. 10, 2025)............................................27

*Cede & Co. v. Technicolor*,
    634 A.2d 345 (Del. 1993) ................................................................................................12, 13

*In re China Agritech, Inc. S'holder Derivative Litig.*,
    No. CIV.A. 7163-VCL, 2013 WL 2181514 (Del. Ch. May 21, 2013)....................................20

*City of Harper Woods Employees' Retirement System v. Oliver*,
    577 F. Supp. 2d 124 (D.D.C. 2008).......................................................................................10

*In re Cred, Inc.*,
    650 B.R. 803 (Bankr. D. Del. 2023) .......................................................................................14

*Crockett v. C.A.G. Invs., Inc.*,
    2010 Ark. 90 (Ark. 2010) .......................................................................................................24

*David B. Lilly Co. v. Fisher*,
    799 F. Supp. 1562 (D. Del. 1992)............................................................................................8

*In re Direct Response Media, Inc.*,
    466 B.R. 626 (Bankr. D. Del. 2012) .......................................................................................15

*In re DSI Renal Holdings*,
    574 B.R. 446 (Bankr. D. Del. 2017) ..............................................................................6, 12, 15

*In re Ebix, Inc.Stockholder Litig.*,
    No. CIV.A. 8526–VCN, 2014 WL 3696655 (Del. Ch. July 24, 2014) ...................................20

*Ellis v. Thompson*,
    590 S.W.3d 774 (Ark. App. 2019)..........................................................................................11

*Emerson v. Thiel College*,
    296 F.3d 184 (3d Cir. 2002)...................................................................................................28

*In re Evergreen Energy, Inc.*,
    546 B.R. 549 (Bankr. D. Del. 2016) ..................................................................................7, 14

*Faulkner v. Arkansas Children's Hosp.*,
    69 S.W.3d 393 (2002)..............................................................................................................25

*In re Fedders North America, Inc.*,
    405 B.R. 527 (Bankr. D. Del. 2009) .......................................................................................17

*In re Furniture Factory Ultimate Holding, L.P.*,
    No. 20-12816, 2023 WL 5662747 (Bankr. D. Del. Aug. 31, 2023) ........................................21

*In re Genesis Health Ventures, Inc.*,
    355 B.R. 438 (Bankr. D. Del. 2006) .......................................................................................23

iv

*In re Global Link Telecom Corp.*,
   327 B.R. 711 (Bankr. D. Del. 2005) .......................................................................................28

*Hamby v. Health Mgmt. Assocs.*,
   462 S.W.3d 346 (Ark. Ct. App. 2015) ....................................................................................26

*Hamilton Partners v. Highland Capital Mgmt.*,
   2014 WL 1813340 (Del. Ch. May 7, 2014) ............................................................................20

*Hawk Mountain v. Mirra*,
   2016 WL 4541032 (D. Del. Aug. 31, 2016) ...........................................................................23

*Hayes v. Advanced Towing Servs.*,
   73 Ark. App. 36, 40 S.W.3d 800 (Ark. Ct. App. 2001) ..........................................................26

*In re Heckmann Corp. Sec. Litig.*,
   869 F. Supp. 2d 519 (D. Del. 2012) ........................................................................................21

*In  re OPP Liquidating Co.*,
   No. 19-10729, 2022 WL 774063 (Bankr. D. Del. Mar. 14, 2022) ..........................................17

*Int'l Ass'n of Heat & Frost Insulators & Asbestos Workers Loc. Union 42 v.
   Absolute Env't Servs.*,
   814 F. Supp. 392 (D. Del. 1993) .............................................................................................25

*K.C. Props. of N.W. Ark. v. Lowell Inv. Partners*,
   373 Ark. 14 (Ark. 2008) .........................................................................................................24

*Kahn v. Lynch Comm. Sys., Inc.*,
   638 A.2d 1110 (Del. 1994) ..............................................................................................17, 19

*Lerner v. Sinovac Biotech Ltd.*,
   691 F. Supp. 3d 326 (D. Mass 2023) .....................................................................................8, 9

*In re: Liberty State Benefits of Delaware, Inc., et al., v. Santander Bank, N.A.*,
   541 B.R. 219 (Bankr. D. Del. 2015) .........................................................................................7

*Malpiede v. Townson*,
   780 A.2d 1075 (Del. 2004) .....................................................................................................20

*McDermott Inc. v. Lewis*,
   531 A.2d 206 (Del. 1987) .........................................................................................................8

*Meng Estate v. Liem*,
   2019 BCCA 127 (Can.)............................................................................................................16

*Metro Storage Int'l. LLC v. Harron*,
   275 A.3d 810 (Del. Ch. 2022)................................................................................................11

*Mountain Home Flight Serv., v. Baxter Cnty.*,
   No. 3:12-CV-03027, 2012 WL 2339722 (W.D. Ark. June 19, 2012) .....................................26

*In Re MTE Holdings*,
   2024 WL 3272224 (Bankr. D. Del. July 1, 2024).......................................................................9

*Norlin Corp. v. Rooney, Pace Inc.*,
   744 F.2d 255 (2d. Cir. 1984)....................................................................................................10

*Norman v. Elkin*,
   860 F.3d 111 (3d Cir. 2017).......................................................................................................8

*Norman v. Elkin*,
   No. CIV.A. 06-005-JJF, 2007 WL 2822798 (D. Del. Sept. 26, 2007), *aff'd*
   860 F.3d 111 (3d Cir. 2017).......................................................................................................9

*Oak Creek Inv. Props. v. Am. Elec. Power Serv. Corp.*,
   No. 4:18-CV-4009, 2020 WL 759929 (W.D. Ark. Feb. 14, 2020)....................................26, 27

*In Re Old BPSUSH*,
   2021 WL 4453595 (D. Del. Sept. 29, 2021)..............................................................................16

*In re PennySaver USA Publ'g*,
   587 B.R. 445 (Bankr. D. Del. 2018) .........................................................................................19

*Poulis v. State Farm Fire and Cas.*,
   747 F.2d 863 (3d Cir. 1984)......................................................................................................28

*Quadrant Structured Prods. v. Vertin*,
   102 A.3d 155 (Del. Ch. 2014)...................................................................................................19

*Resolution Trust Corp. v. Everhart*,
   37 F.3d 151 (4th Cir. 1994) ......................................................................................................10

*In re Space Case*,
   Adv. No. 23-50748 (BLS), 2024 WL 1628440 (Bankr. D. Del. Apr. 15, 2024)....................18

*Sterling v. Mayflower Hotel Corp.*,
   93 A.2d 107 (Del.1952) ............................................................................................................19

*In re Tops Holding II Corporation*,
   646 B.R. 617 (Bankr. S.D.N.Y. 2022)........................................................................................9

*In re UD Dissolution Corp.*,
   629 B.R. 11 (Bankr. D. Del. 2021) ...........................................................................................21

*In re USA Detergents, Inc.*,
   418 B.R. 533 (Bankr. Ct. D. Del. 2009) ...................................................................................16

4936-6184-0250 v1

*In re Walt Disney Co. Derivative Litig.*,
    906 A.2d 27 (Del. 2006) ..............................................................................15, 23

*Weinberger v. UOP, Inc.*,
    457 A.2d 701 (Del. 1983) ....................................................................................17

*Willensky v. Lederman*,
    No. 13-CV-7026 KMK, 2015 WL 327843 (S.D.N.Y. Jan. 23, 2015) ......................................9

*Witmer v. Armistice Cap.*,
    No. 2022-0807-MTZ, 2025 WL 2350799 (Del. Ch. Aug. 14, 2025) ......................................19

*Yucis v. Sears Outlet Stores*,
    813 F. App'x 780 (3d 2020) ..................................................................................16

*In re Zohar III Corp.*,
    639 B.R. 73 (Bankr. D. Del. 2022) ...........................................................................23

**Statutes**

11 U.S.C. § 101-1532 ............................................................................................6

11 U.S.C. § 108(a) ...............................................................................................11

Ark. Code. Ann. § 16-56-105 (2025)...............................................................................11

**Rules & Regulations**

Fed. R. Bankr. P. 7008...........................................................................................7, 28

Fed. R. Bankr. P. 7015..........................................................................................28

**Other Authorities**

Order (Recognition Order), No. S233209, Vancouver Reg. (S.C. B.C. Nov. 17,
    2023) (PDF available at
    https://www.alvarezandmarsal.com/sites/default/files/canada/Order%20%28R
    ecognition%20Order%29%20dated%20Nov.%2017%202023.pdf) ......................................10

Restatement (Second) of Conflicts of Laws § 309 (1971).............................................................9

## I.  NATURE AND STAGE OF PROCEEDINGS

This adversary proceeding arises from a Chapter 11 bankruptcy involving Structurlam Mass Timber U.S. Inc. ("Structurlam"), a Delaware corporation.  The Complaint in this adversary proceeding was filed on June 24, 2025 by Heather L. Barlow (the "Trustee"), in her capacity as liquidating trustee of the Structurlam Liquidating Trust, against Defendants Brian Hooper, Cindi Marsiglio, and Christine Allen, all of whom served as Directors of Structurlam's parent corporation, SLP Holdings, Ltd. ("SLP"), while also serving as senior executives at Walmart. Defendants filed a Motion to Dismiss on September 17, 2025.  The Trustee, by and through her undersigned counsel, submits this Opposition to Defendants' Motion to Dismiss.

## II.  SUMMARY OF ARGUMENT

The arguments raised by Defendants in their Motion to Dismiss are meritless and should fail.

1.     The Complaint was filed within the applicable statute of limitations.  Defendants' insistence that British Columbia's two-year statute of limitations applies because of the "internal affairs doctrine" is erroneous because the doctrine does not apply to procedural issues, such as the statute of limitations, under Third Circuit precedent.  Further, British Columbia has almost nothing to do with this case, while Delaware and Arkansas—both states that have three-year statutes of limitations—do.  The claim was filed within three years and thus is not time barred.

2.     The Trustee sufficiently alleged both that fiduciary duties existed, and that Defendants breached those duties.  Defendants largely ignore the liberal pleading standard at this stage.  Here, the Trustee's Complaint alleges that Defendants owed duties of loyalty, care, and good faith to SLP.  The Complaint also repeatedly alleges that these duties were extended to Structurlam U.S. by virtue of SLP's effective control of Structurlam U.S.  So too, the Complaint plausibly alleges that Defendants violated these duties, detailing specific examples of how

1

Defendants stood on both sides of the Project while advancing Walmart's interests, rather than Debtors. The Complaint is rife with specific examples regarding how Defendants breached their duties. Defendants' attempts to impose improper requirements on the Trustee at this stage, including by prematurely resorting to the business judgment rule, should fail.

3.      Defendants' arguments that the Complaint engages in improper "group pleading" misrepresents the legal standard—one that only allows for dismissal in the most extreme of cases—while once again ignoring key specific allegations within the Complaint.

4.      The Trustee sufficiently pled tortious interference with contract, pleading the requisite standard under both Delaware and Arkansas law, including adequately pleading impropriety by Defendants. And Defendants' apparent reliance on their employment with Walmart to shield themselves from liability with respect to SLP should fail.

Should the Court be inclined to grant relief to Defendants, the Trustee respectfully requests that she be allowed to amend her Complaint, in line with the Third Circuit's preference to resolve cases on the merits.

## III.   STATEMENT OF FACTS

Debtors were leading manufacturers of Cross Laminated Timber ("CLT") and Glued Laminated Timber ("glulam") used in construction and industrial markets. Complaint at ¶ 25, Dkt. No. 1 ("Compl.").

### A.      Walmart and Structurlam Enter into TSA 1

On or about December 3, 2019, Walmart, Structurlam U.S. and SLP entered into a *Walmart Realty Supplier Agreement — Goods Not For Resale* ("TSA 1"). Under TSA 1, Walmart agreed to purchase CLT, glulam, steel, and hardware (collectively, the "Goods") from Structurlam U.S. for use in constructing approximately twelve buildings for Walmart's new home office campus project (the "Project"). *Id.* ¶ 26. TSA 1 served as the basis for Structurlam U.S. to establish a new

2

manufacturing facility in Conway, Arkansas and for it to raise debt and equity financing to fund the new facility. *Id.*

At the time, Walmart held or controlled, directly or indirectly, an ownership interest of approximately thirty-four percent (34%) of SLP's preferred equity interest. *Id.* ¶ 27. SLP, in turn, owned one hundred percent (100%) of the equity of Structurlam Mass Timber Corporation and Structurlam Mass Timber U.S. (collectively, "Structurlam"). *Id.*

SLP's board of directors maintained significant influence over the business actions of the Debtors. *Id.* ¶ 28. On or before March 17, 2020, Walmart or its affiliates elected three senior Walmart executives to SLP's board of directors: Defendants Brian Hooper (who served as Vice President, Corporate Real Estate and Facilities at Walmart at the time), Cindi Marsiglio (who served as Vice President, Merchandising and U.S. Manufacturing at Walmart at the time), and Christine Allen (who served as Walmart's Chief Financial Officer at the time). *Id.* ¶¶ 19–21; 28.

### B.    Walmart and Structurlam Enter into TSA 2

On or about June 24, 2022, Structurlam U.S. and Walmart entered into an *Amended and Restated Walmart Realty Supplier Agreement — Goods Not For Resale* ("TSA 2") which, by its terms, replaced TSA 1. *Id.* ¶ 29; *see* Ex. 1 to Compl. SLP was Structurlam U.S.'s sole Guarantor under TSA 2. *Id.* At all times during the negotiation and duration of TSA 2, Defendants were corporate directors of SLP (with access to inside information regarding Debtors' business) and also senior executives at Walmart (with access to inside information regarding Walmart's business). *Id.* ¶¶ 37; 38.

Defendant Brian Hooper was listed in the TSA 2 as an individual to send "[a]ll notices and other communications" for Walmart, the "Purchaser." *Id.* ¶ 31. Defendant Hooper was also the sole signatory for Walmart, signing the document on June 27, 2022—when he had already been

3

serving on SLP's board.  *Id.*  Defendant Marsiglio was the primary point of contact at Walmart for negotiating the Project.  *Id.* ¶ 32.

The terms of TSA 2 required Walmart to purchase certain Goods from Structurlam U.S. on both an exclusive and non-exclusive basis, following a schedule attached to TSA 2.  *Id.* ¶ 33. TSA 2 was intended by both Walmart and Structurlam U.S. to provide a financial foundation on which Structurlam U.S. would be able to raise additional equity financing to support operations. *Id.* ¶ 35.

### C.     Defendants' Intricate Involvement in the Project

Aside from being involved in the negotiation of TSA 2, Defendants were also involved throughout the duration of the Project.  For example:

- At joint Board of Directors meetings with SLP and Structurlam attended by Defendants (about a dozen from 2020 to 2022), information regarding the Debtors' financial information and operations was freely exchanged and Structurlam U.S.'s work for Walmart was a regular topic of discussion and decision-making. *Id.* ¶¶39–41.  Topics that were discussed included compliance with (and delay to) the delivery schedule outlined in TSA 1 and TSA 2, the budget and finances for the Project, the Conway facility, at which the Goods intended for Walmart would be manufactured, and coordination with Walmart for the Project.  *Id.* ¶ 42.

- Defendant Hooper participated in weekly meetings with the Debtors' CEO in 2022 to closely monitor Debtors' production.  *Id.* ¶ 44.

- Defendants additionally insisted on joining weekly subcommittee calls to discuss matters relating to Debtors' production, where confidential information regarding Debtors' progress and production facilities was discussed and where Defendants gained further insight into Debtors' financial situation.  *Id.* ¶ ¶ 45–46.

Through these and other activities, Defendants possessed confidential information regarding the Debtors' finances, production capabilities, and business strategies, including the importance of TSA 2 to Structurlam U.S.'s success.  *Id.* ¶¶ 49–52.

### D.   Walmart Fails to Meet Its Obligations Under TSA 2

Walmart proceeded to materially alter the construction sequence of the Project within one month of entering into TSA 2, redesigning the delivery schedule and demanding extracontractual adjustments, leading to a substantial reduction in the profit margin Structurlam U.S. was expected to receive under TSA 2.  *Id.* ¶ 54.  The financial impact of Walmart's actions impeded Structurlam U.S.'s ability to maintain its loan covenants, which were closely tied to its revenue guaranteed under TSA 2.  *Id.*  Consequently, Walmart's unreasonable demands severely undermined Structurlam U.S.'s ability to operate profitably and fulfill its contractual obligations to third parties. *Id.* ¶ 55. And despite the knowledge gained as Directors of SLP, Defendants chose to serve Walmart, their employer, rather than the interests of Debtors. *See, e.g.*, *id.* ¶ 56.  Indeed, even when Walmart refused to pay invoices for delivered and accepted goods on a timely basis on over a dozen occasions, Defendant Directors failed to intervene and instead used their knowledge to aid Walmart in its insistence on unreasonable modifications and performance demands under TSA 2.  *Id.* ¶ 58.

In October 2022, Structurlam U.S. repeatedly made manufactured Goods available for inspection and delivery pursuant to TSA 2.  *Id.* ¶ 59.  Walmart never asserted that the Goods were nonconforming, yet it refused to pick up and inspect the Goods for delivery, which delayed invoices and ultimately forced Structurlam to suspend production at its facility.  *Id.* ¶ 59.  Once again, Defendants failed to intervene and instead used their knowledge to aid Walmart in its insistence on unreasonable modifications and performance demands under TSA 2.  *Id.* ¶ 60.  In the months that followed, the same dynamic continued: with Walmart continuing to breach TSA 2 and Structurlam U.S. continuing to perform extracontractual work demanded by Walmart.  *See, e.g.*, *id.* ¶ 61.

5

### E.    Walmart Terminates TSA 2 to Debtors' Detriment Following Defendants' Wrongful Conduct

On December 21, 2022, Walmart issued a "Notice of Default" to Structurlam U.S.  *Id.* ¶ 62. And despite Structurlam's extracontractual efforts to work towards a solution with Walmart in good faith, Walmart continued to refuse to pay past-due invoices and to accept delivery of conforming Goods, causing Structurlam to experience severe economic and liquidity distress.  *Id.* ¶ 62.

Upon information and belief, Walmart began negotiating with and sourcing Goods from other suppliers, including Mercer Mass Timber and SmartLam North America, in direct violation of the exclusivity terms of TSA 2.  *Id.* ¶ 64.  Defendant Directors knew about these arrangements. *Id.* ¶ 66.  Meanwhile, Structurlam U.S. was prohibited by TSA 2 from accepting new business outside of Walmart.  *Id.* ¶ 64.

On January 11, 2023, Walmart issued a "Notice of Termination" of TSA 2 to Structurlam. *Id.* ¶ 67.  This led directly to Debtors' bankruptcy under title 11 of the United States Code, 11 U.S.C. § 101-1532 (the "Bankruptcy Code") on April 21, 2023.  *Id.* ¶ 70.

After gathering the initial facts necessary to understand the Defendant Directors' role in the events that transpired, the Trustee commenced this action against Defendants for breach of their fiduciary duties and for tortious interference with TSA 2.

## IV.    ARGUMENT

### A.    Standard of Review

"When considering a motion to dismiss, courts [should] 'construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'"  *In re DSI Renal Holdings*, 574 B.R. 446, 473 (Bankr. D. Del. 2017).  "The question is not whether plaintiffs' claims will ultimately succeed on

6

their merits, but [rather] whether the facts as pled are sufficient to warrant discovery, viewed in the light most favorable to the non-moving party." *In re Autobacs Strauss*, 473 B.R. 525, 552 (Bankr. D. Del. 2012) (quotation omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face' . . . factual allegations must be enough to raise a right to relief above the speculative level." *In re Evergreen Energy, Inc*., 546 B.R. 549, 557 (Bankr. D. Del. 2016). Under Rule 8 of the Federal Rules of Civil Procedure, "substantive sufficiency and sufficient notice are all that are required." *In re: Liberty State Benefits of Delaware, Inc., et al., v. Santander Bank, N.A.*, 541 B.R. 219, 233 (Bankr. D. Del. 2015).

> **B.** **The Trustee's Breach of Fiduciary Duty Claim Is Timely and Sufficiently Pled and Should Not Be Dismissed**

Defendants' arguments regarding the Trustee's claim for breach of fiduciary duty all fall short. *First*, the Trustee's claim is not time barred. *Second*, the Trustee adequately alleged that Defendants breached their fiduciary duties of loyalty, good faith, and care. *Third*, the Complaint sufficiently alleges that Defendants owed fiduciary duties to Structurlam U.S. by virtue of their management and oversight of the Project in their capacity as SLP Directors. And *Fourth*, the Trustee did not improperly group plead.

> **1.** **The Trustee's Breach of Fiduciary Duty Claim Is Not Time Barred**

Defendants wrongfully submit that British Columbia's two-year statute of limitations applies to the Trustee's breach claim "since SLP is a British Columbia corporation," arguing that the "internal affairs doctrine," a conflict of law principle that recognizes that the state of incorporation should have control over certain internal affairs of a corporation, governs. Defs.' Opening Br. in Supp. of Mot. to Dismiss Pl. Compl. at 8, Dkt. No. 39 ("Defs.' Br."). In support,

Defendants cite a single non-precedential case. *See id.* Defendants' argument lacks merit for multiple reasons, as set forth in detail below.

**a)**  **The Internal Affairs Doctrine Does Not Apply to Procedural Issues Such as the Statute of Limitations**

Defendants cherry-pick British Columbia law as governing the Trustee's breach claim, but give the analysis cursory treatment, ignoring that the internal affairs doctrine does not apply to procedural issues such as limitations periods. *See McDermott Inc. v. Lewis*, 531 A.2d 206, 214 (Del. 1987) (noting that the internal affairs doctrine extends only to "those matters which are peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders"); *see also Lerner v. Sinovac Biotech Ltd*., 691 F. Supp. 3d 326, 333 (D. Mass 2023) ("the application of a statute of limitations has little bearing on the internal affairs of a corporation").

"Generally, statutes of limitations are deemed to be procedural for conflict of law purposes." *David B. Lilly Co. v. Fisher*, 799 F. Supp. 1562, 1568 (D. Del. 1992); *see also In re Art Inst. of Phila.*, No. 18-11525, 2022 WL 18401591, at *8 (Bankr. D. Del. Jan. 12, 2022) ("A Delaware state court hearing a claim governed by the law of another state would apply the Delaware statute of limitations, not the statute of the jurisdiction whose substantive law would control."); *B.E. Cap. Mgmt. Fund LP v. Fund.com Inc.*, 171 A.3d 140, 147 (Del. Ch. 2017) (holding that even when a contract specifies a choice of law, this specification does not apply to the limitations period "because the statute of limitations is a procedural matter").

Indeed, the Third Circuit recently examined this issue and rejected what it called the "dubious premise" that the internal affairs doctrine must apply to procedural matters, calling that assertion "an overreach." *Norman v. Elkin*, 860 F.3d 111, 122 (3d Cir. 2017). The court then affirmed the district court ruling that the internal affairs doctrine "is not applicable to determining

8

the relevant statute of limitations." *See Norman v. Elkin*, No. CIV.A. 06-005-JJF, 2007 WL 2822798, at *3 (D. Del. Sept. 26, 2007), *aff'd* 860 F.3d 111 (3d Cir. 2017).

The Third Circuit's conclusion is consistent with how other courts apply the doctrine. *See, e.g.*, *In re Tops Holding II Corporation*, 646 B.R. 617, 693 (Bankr. S.D.N.Y. 2022) (finding that the internal affairs doctrine applies to substantive points of law, but New York statute of limitations applies because of the procedural nature of the issue); *Willensky v. Lederman*, No. 13-CV-7026 KMK, 2015 WL 327843, at *5 (S.D.N.Y. Jan. 23, 2015) (". . . no New York court has held that the internal affairs doctrine requires that it apply the *statute of limitations* [to] a defendant corporation's home state"); *Lerner*, 691 F. Supp. 3d at 333.

Strikingly, the unpublished opinion Defendants cite in support of the internal affairs doctrine does not even mention the statute of limitations. *In Re MTE Holdings* arose in a different context and dealt with different issues. There, the court recommended entry of judgment in favor of a trustee on certain claims for fraudulent conveyance and breach of fiduciary duty and for defendants on others following a trial in an adversary proceeding. The statute of limitations was not disputed or relevant. *See* 2024 WL 3272224 at *9 (Bankr. D. Del. July 1, 2024).

### b)   British Columbia Has Little to Do With This Case

The internal affairs doctrine also does not apply because British Columbia has almost nothing to do with this case, while Delaware and Arkansas are inextricably connected to it. *See* Restatement (Second) of Conflicts of Laws § 309 (1971) ("the local law of the state of incorporation will be applied to determine the existence and extent of a director's or officer's liability to the corporation, its creditors and shareholders, except where, with respect to the particular issue, some other state has a more significant relationship . . . in which event the local

9

law of the other state will be applied.").[2]  *See also City of Harper Woods Employees' Retirement System v. Oliver*, 577 F. Supp. 2d 124, 129 (D.D.C. 2008) (noting an exception to the internal affairs doctrine may be available when there is an "overriding interest of that other state in the issue to be decided"); *Norlin Corp. v. Rooney, Pace Inc.*, 744 F.2d 255, 264 (2d. Cir. 1984) ("When the interests of only one state are truly involved, the purported conflict is purely illusory.  Thus, there is no reason why the law of the forum state should not control") (choosing not to apply Panamanian law); *Resolution Trust Corp. v. Everhart*, 37 F.3d 151, 153 (4th Cir. 1994) ("In cases of directors' liability, automatic reference to the law of the state of incorporation is rejected.").

This dispute principally involves Structurlam U.S., a United States-incorporated company, that sold products in the United States and entered into an agreement with Walmart (a United States-based company) to produce products made in the United States, for an exclusively United States-based job.  This case was filed as an adversary proceeding within the United States, by a bankruptcy trustee based in the United States, related to a bankruptcy controlled by United States courts, against Defendants who are all based in the United States and a lead Debtor based in the United States (with the Canadian bankruptcy court already giving full force and effect to the U.S. bankruptcy court proceeding).[3]  Defendants do not show—or even allege—that British Columbia has a paramount, equal, or even significant, interest in this case.  Indeed, Defendants expressly

---

[2] Moreover, application of the "internal affairs doctrine" makes little sense here.  The purpose of the doctrine is to ensure that the state of incorporation determines issues related to internal corporate affairs.  SLP is no longer an active entity, and therefore application of the doctrine would serve no purpose here.

[3] *See* Order (Recognition Order), No. S233209, Vancouver Reg. (S.C. B.C. Nov. 17, 2023) (PDF available at https://www.alvarezandmarsal.com/sites/default/files/canada/Order%20%28Recognition%20Order%29%20dated%20Nov.%2017%202023.pdf).  Defendants' insistence that British Columbia law applies to the breach of fiduciary duty claim is also belied by the fact that, throughout the rest of Defendants' argument regarding this same claim, Defendants almost exclusively cite *Delaware* case law.  *See, e.g.*, Defs'. Br. at 10 (citing three Delaware cases, including one that very briefly examines British Columbia law); *id.* at 11 (citing two Delaware cases, no examination of British Columbia law); *id.* at 12 (citing five Delaware cases and one British Columbia case).

10

acknowledge later in their brief that "Arkansas has the 'most significant relationship' to this case." *See* Defs.' Br. at 17.

Based on a significant relationship assessment, either Delaware or Arkansas's limitation period applies, and both states have an identical three-year limitations period for breach of fiduciary duty claims. *See Ellis v. Thompson*, 590 S.W.3d 774, 779 (Ark. App. 2019) (citing Ark. Code. Ann. § 16-56-105 (2025)); *In re AMC Inv'rs*, 656 B.R. 95, 105 (D. Del. 2024). The Trustee filed her claim on June 24, 2025. By Defendants' own admission, the claims were filed within a three-year period. *See* Defs.' Br. at 9 (citing a timeline that began in July 2022 and ends in January 2023). The Trustee's breach of fiduciary duty claim is not time-barred.[4]

### 2. The Trustee Sufficiently Alleged That Defendant Directors Breached Their Fiduciary Duties

Largely ignoring the procedural posture and liberal pleading standard at this stage of the case, Defendants claim that the Trustee "fail[ed] to adequately allege that any Defendant breached any fiduciary duty." Defs.' Br. at 10. But as demonstrated below, the Trustee sufficiently alleged breaches of the duties of care, loyalty, and good faith, and Defendants' assertions to the contrary either ignore or purposefully mischaracterize the allegations set forth in the complaint.

To allege a breach of fiduciary duty, a plaintiff must allege both that a fiduciary duty exists, and that a defendant breached that duty. *See In re BYJU's Alpha, Inc.*, 661 B.R. 109, 125 (Bankr. D. Del. 2024); *Metro Storage Int'l. LLC v. Harron*, 275 A.3d 810, 840 (Del. Ch. 2022) (a claim for

---

[4] Defendants' cursory resort to the Bankruptcy Code is also unavailing. By Defendants' own admission, Bankruptcy Code Section 108(a) permits the Trustee to file before the expiration of the statute of limitations period. Defs.' Br. at 10. Furthermore, under Delaware law, the statute of limitations is triggered upon *discovery* of the wrong. *See In re AMC Inv'rs*, 656 B.R. 95, 105 (D. Del. 2024). There are numerous wrongs alleged within the Complaint, and the timing of when these wrongs were discovered is unclear, which further makes dismissal on statute of limitations grounds inappropriate. *See, e.g.*, Compl. ¶¶ 64–65 (discussing how Defendants knew about but did nothing regarding Walmart negotiating with and sourcing goods from other suppliers, in violation of TSA 2); *see also In re Abound Solar Mfg.*, 547 B.R. 611, 620 (Bankr. D. Del. 2016) (when the Plaintiff had "knowledge of the facts essential to the cause of action" is a question of fact that had not been developed at the motion to dismiss stage of the proceedings; the Court therefore would "not dismiss the Complaint on the basis of the statute of limitations.").

breach of fiduciary duty "has only two formal elements . . ."). Here, the Complaint alleges fiduciary duties owed by Defendants to SLP, including by virtue of their membership on SLP's Board: specifically, the duties of loyalty, care, and good faith. *See, e.g.*, Compl. ¶ 6 (Defendants owed SLP a "duty of care, loyalty, and good faith"). The Complaint also repeatedly explains that this duty extended to Structurlam U.S. *see, e.g.*, *id.* ¶ 7, and to Debtors generally, *see id.* ¶ 9 ("Defendants' fiduciary duty to Debtors bound them to act in the best interest of Debtors . . ."). And as to the second requirement, the Complaint repeatedly, thoroughly, and specifically alleges that Defendants breached these duties and explains how they did so. *See, e.g.*, *id.* ¶ 10 ("Defendants breached their duty to Debtors by prioritizing Walmart's business to the detriment of Debtors' business."); *id.* ¶ 38 ("Defendants were required to prioritize the best interests of Debtors over the best interests of Walmart. Defendants failed to do so.").

### a)    The Complaint Adequately Alleges Breaches of the Duties of Loyalty and Good Faith

When, as here, Defendants are alleged to have stood on both sides of a transaction, in order to allege a breach of the duty of loyalty and good faith, a complaint must simply show a "plausibly pled scheme." *In re DSI Renal Holdings*, 574 B.R. 446, 472 (Bankr. D. Del. 2017) (finding it plausible that defendants breached their duties of loyalty and good faith even without certain specific details that did not need to be pled "at this stage of the proceedings"). The Trustee's Complaint is rife with specific and plausible facts showing that Defendants breached these two interconnected duties.

### i)    Duty of Loyalty

"[T]he duty of loyalty mandates that the best interest of the corporation and its shareholders takes precedence over any interest possessed by a director, officer or controlling shareholder and not shared by the stockholders generally." *Cede & Co. v. Technicolor*, 634 A.2d 345, 361

12

(Del. 1993). A "[c]lassic example[] of director self-interest in a business transaction involve either a director appearing on both sides of a transaction or a director receiving a personal benefit from a transaction not received by the shareholders generally." *Id.* at 362. As articulated by Defendants, to state a claim for breach of the duty of loyalty, a plaintiff must allege that a defendant *either* "(1) 'stood on both sides of the transaction and dictated its terms in a self-dealing way, or (2) received in the transaction a personal benefit that was not enjoyed by the shareholders generally.'" Defs.' Br. at 13 (quotation omitted).

Here, the Complaint easily meets the requisite pleading standard. The Complaint clearly alleges that the Defendant Directorss, as senior executives at Walmart, effectively forced themselves into the TSA 2 negotiations and the Project that it governed, standing on both sides of the transaction in a way that served Walmart at Debtors' expense. For example, the Complaint details how Defendants used confidential information gleaned from their service on SLP's board "to assist Walmart in its insistence on unreasonable modifications to and performance demands under TSA 2." Compl. ¶ 56; *see also id.* ¶¶ 58; 60. As senior executives at Walmart, Defendants had first-hand knowledge of Walmart's efforts to renege on TSA 2, while leaving Debtors in the proverbial financial wind.

Defendants' characterization of themselves as having simply "worked at Walmart" is an absurd understatement. Defs.' Br. at 13. Defendants were all senior executives with decision-making power at Walmart, and the Complaint alleges that Defendant Hooper was the *sole signatory* of TSA 2—not on behalf of Debtors, but on behalf of Walmart. Compl. ¶ 31. Indeed, contrary to Defendants' assertion otherwise, the Complaint details what was discussed at weekly meetings between Structurlam's CEO and Defendant Hooper. *See* Compl. ¶ 44 (weekly meetings were "to closely monitor Debtors' production"). Defendants appear to utterly ignore the paragraphs within

the Complaint discussing specifically how "confidential information regarding Debtors' progress and production facilities" was discussed on weekly calls that Defendants each insisted on joining, *see* Compl. ¶ 45, or the litany of topics that were discussed at other board meetings at which Defendants were present, *see, e.g.*, Compl. ¶ 42 (listing the topics). The Complaint also alleges that Defendant Marsiglio was the *primary point of contact* for negotiation of the entire project. Compl. ¶ 32.

In *In re Evergreen Energy*, 546 B.R. at 560, the court refused to dismiss a breach of fiduciary duty claim where a trustee alleged that an individual improperly stood on both sides of a transaction in a way that eventually caused harm to the debtor. The court rejected the defendant's argument that dismissal was warranted because the complaint did not allege that he "participate[d] in the decision process of a challenged transaction," noting that "the Complaint does not allege wrongful approval of a transaction, but instead alleges that [the defendant] had divided loyalties in connection with his role . . . which caused harm to [the debtor]." *Id.* at 561. Likewise, the complaint here provides the requisite nexus between the Defendants' positions and the harm to Debtors.

The two cases that Defendants proffer are distinguishable in that they do not have the factual detail alleged in the Complaint here. In *In re Cred, Inc.*, 650 B.R. at 831, the complaint simply noted that a director was on both sides of a transaction—a transaction that benefited one party disproportionately. 650 B.R. 803 (Bankr. D. Del. 2023). The complaint did not detail the types of information that the director was privy to or allege that he used the information to the detriment of one party. And *In re AgFeed*, 546 B.R. 318, 331 (Bankr. D. Del. 2016) involves a defendant that did not have "any role" in the project at issue, unlike the instant case where one Defendant *was the sole signatory on behalf of Walmart*, another was the "point of contact" for

14

negotiation *on behalf of Walmart*, and another served as the Corporate Chief Financial Officer for Walmart who regularly inserted herself into meetings and discussions about the project at issue.

### ii)    Duty of Good Faith

The duty of good faith is a "subsidiary element" of the duty of loyalty.  *See* Defs.' Br. at 14; *In re Walt Disney Co. Derivative Litig.*, 906 A.2d 27, 67 (Del. 2006) (agreeing with a lower court that "[a] failure to act in good faith may be shown, for instance, where the fiduciary intentionally acts with a purpose other than that of advancing the best interests of the corporation, where the fiduciary acts with the intent to violate applicable positive law, or where the fiduciary intentionally fails to act in the face of a known duty to act, demonstrating a conscious disregard for his duties").  To allege breach of the duty of good faith, especially at a point where no discovery has occurred, a plaintiff must merely allege a "plausibly pled scheme." *In re DSI Renal Holdings*, 574 B.R. at 472.

Despite Defendants' repeated attempts to improperly impose a heightened pleading standard, the Trustee's Complaint repeatedly details how Defendants acted in a manner that advanced Walmart's interests, rather than Debtors'.  *See, e.g.*, Compl. ¶¶ 56; 58; 60; 63; 65.  The Complaint further details how Defendants were privy to confidential information, for example regarding Debtors' finances, but chose not to use the information to ensure Debtors' survival, instead prioritizing the needs of Walmart.  *See id*.  These allegations are sufficient to state a claim for breach of the duty of good faith.  *See generally In re Direct Response Media, Inc*., 466 B.R. 626, 650 (Bankr. D. Del. 2012) ("The factual allegations alleged in the Amended Complaint are sufficient to entitle the Trustee to offer evidence to support the claims."); *In re DSI Renal Holdings*, 574 B.R. 446, 473 (Bankr. D. Del. 2017) (denying a motion to dismiss, finding "no need to show specific amounts" at this stage).

15

*In re USA Detergents, Inc*., 418 B.R. 533, 545 (Bankr. Ct. D. Del. 2009), is a case involving similar issues. There, allegations by a trustee included breaches of the duty of good faith by directors that used their positions to limit the exposure of other companies to which they were linked, "rather than what was in the best interest" of the then bankrupt corporation. *Id.* The court denied a motion to dismiss, finding that there were "facts, if taken as true," as necessary in the motion to dismiss stage, that would show a breach of the duty of good faith. *See id.* at 546.

And again, the cases cited by Defendants are plainly distinguishable. In *In Re Old BPSUSH*, 2021 WL 4453595 (D. Del. Sept. 29, 2021), there were no allegations that a defendant was on both sides of a transaction, *see id.* at *11. And in *Yucis v. Sears Outlet Stores*, 813 F. App'x 780, 785, n.8 (3d 2020), the Third Circuit examined an anti-discrimination claim under New Jersey law that simply lacked any details or elements of the tort whatsoever; finding that the claim required a level of intentionality or recklessness that was not even alleged. *See id.* at 785.[5]

### b)    The Complaint Adequately Alleges Breach of the Duty of Care

To allege breach of a duty of care, a plaintiff must plead facts alleging that a defendant acted with gross negligence, generally requiring that a "defendant was recklessly uniformed or acted outside the bounds of reason." *See In re Bayou Steel BD Holdings, L.L.C.*, 651 B.R. 179, 184 (Bankr. D. Del. 2023) (citation omitted). In this context, a specific "decision" is not necessary.[6] Instead, "the exact behavior that will constitute gross negligence varies based on the

---

[5] Likewise, in *Meng Estate v. Liem*, 2019 BCCA 127 (Can.), the case posture and context was entirely different from that presented here. The Canadian court examined an appeal of a liability judgment by analyzing the evidence that was already in the record, finding that the plaintiff has not proved the case. *See id.*, para 37 ("[t]here is no basis in the evidence. . ."); para 38 ("[t]he plaintiff carries the burden of proving that a breach of duty caused loss."); *id.,* para 39 ("[o]n the evidence described above . . . "); *id.*, para 40 ( . . . the Mengs' have not proven damage. . .").

[6] Defendants cite a case that applied Nevada law to a different issue, under a different set of circumstances, to suggest that a defendant must have "actually made" a decision to breach the duty of care. *See* Defs.' Br. at 12 (citing *In re AgFeed U.S.*, 546 B.R. 318, 329, 320 (Bankr. D. Del. 2016) (where the parties agreed that "Nevada state law" applied to the relevant count, *see id.* at 328). Moreover, even this decision acknowledged that a "failure to act" may satisfy the standard as well ("the complaint does not address how any of Gothner's actions, or failure to act, were grossly negligent"). *See id.* at 329–330.

4936-6184-0250 v1

situation, but generally requires directors and officers to fail to inform themselves fully and in a deliberate manner." *In re Fedders North America, Inc.*, 405 B.R. 527, 539 (Bankr. D. Del. 2009).

Here, the Complaint alleges that Defendants "knew or should have known" that Walmart's actions would severely impact Structurlam U.S.'s financial position, and were duty-bound to act in the best interests of Debtors. *See, e.g.*, Compl. ¶¶ 55; 58; 60; 63; 65; 68. The Complaint repeatedly alleges that Defendants did not act in Debtors' best interests, choosing instead to serve Walmart's best interests. The Complaint details how as directors of SLP, either Defendants somehow did not know basic facts about SLP and Structurlam's financial position—in other words, they were "recklessly uninformed," and breached the duty of care, or, as discussed in greater detail above, they were informed, yet wrongly chose not to act in Debtors' best interest. Either way, Defendants breached their duties of care.

Defendants' insistence that the business-judgment rule somehow protects their actions is unavailing. *See* Defs.' Br. at 12. First, to the extent the business judgment rule is implicated, it is an affirmative defense that is inappropriate to raise on a motion to dismiss. *See in Re OPP Liquidating Co.*, No. 19-10729, 2022 WL 774063, at *7 (Bankr. D. Del. Mar. 14, 2022) ("The Court agrees with the Liquidating Trustee that the business judgment rule is an affirmative defense and should not be considered at the motion to dismiss stage. Only if the complaint raises the business judgment rule on its face will courts consider its applicability at the motion to dismiss stage."). The business-judgment rule was not raised in the Trustee's Complaint, and Defendants' resorting to it at this stage is premature. And, second, "[a] controlling or dominating shareholder standing on both sides of a transaction . . ., bears the burden of proving its entire fairness." *Kahn v. Lynch Comm. Sys.*, *Inc.*, 638 A.2d 1110, 1115 (Del. 1994) (citation omitted); *see also Weinberger v. UOP, Inc.*, 457 A.2d 701, 710 (Del. 1983) ("The requirement of fairness is unflinching in its

17

demand that where one stands on both sides of a transaction, he has the burden of establishing its entire fairness, sufficient to pass the test of careful scrutiny by the courts.").  Here, Walmart dominated the board of SLP, and its executives stood on both sides of the transaction; any decision (or inaction) should be judged by the more rigorous entire fairness rule.[7]

c)      **The Trustee Sufficiently Alleges That Defendants Owed and Breached Fiduciary Duties to Structurlam U.S.**

Grasping at straws, Defendants' final argument with respect to the Trustee's breach of fiduciary duty claim is two-fold.  First, Defendants appear to suggest that the Trustee needed to allege duties owed to all four Debtors.  Defs.' Br. at 15–16.  Then, seeming to concede that Structurlam U.S. is the relevant Debtor here, Defendants argue that the Complaint fails to allege Defendants "exercised any management oversight over Structurlam."   Defs.' Br. at 16. Defendants' arguments lack merit.

As pled by the Trustee and acknowledged by Defendants, Debtor SLP was a holding company that owned 100% of the equity in Debtor Structurlam U.S.  *See* Compl. ¶¶ 18–19*; see also* Defs.' Br. at 16–17.  Defendants sat on the Board of Directors for Debtor SLP during the relevant time period.  The fact that there were two additional Debtors named in the bankruptcy has no bearing on the Trustee's claims here against Defendants, which flow directly from their service on Debtor SLP's board.

And while Defendants argue that as Directors of "parent" SLP, they owed no duty to "wholly-owned" subsidiary Structurlam, *see* Defs.' Br. at 16–17, they largely ignore the fact that Delaware law imposes fiduciary duties on those who effectively control a corporation, as

---

[7] Indeed, the first case Defendants cite for their proposition regarding the business judgment rule illustrates this point. *See In re Space Case*, Adv. No. 23-50748 (BLS), 2024 WL 1628440, at *1 (Bankr. D. Del. Apr. 15, 2024) ("The Complaint does not allege that the Officers engaged in any self-interested or conflicted transactions that would support a claim for a breach of the duty of loyalty.").

18

Defendants did with respect to Structurlam U.S. by virtue of their insistence on direct involvement with and oversight of the Project. *See Quadrant Structured Prods. v. Vertin*, 102 A.3d 155, 183–84 (Del. Ch. 2014) ("As the owner of 100% of the Company's equity, EBF controlled the Company and stood on both sides of the transaction. Delaware law imposes fiduciary duties on those who effectively control a corporation."); *see also Kahn v. Lynch Commc'n Sys. Inc.*, 638 A.2d 1110, 1114 (Del.1994) (holding that 43% stockholder that exercised actual control over subsidiary could be liable for breach of fiduciary duty); *Sterling v. Mayflower Hotel Corp.*, 93 A.2d 107, 109–10 (Del.1952) (citing "the settled rule of law that Hilton as majority stockholder of Mayflower and the Hilton directors as its nominees occupy, in relation to the minority, a fiduciary position in dealing with Mayflower's property"); *see also* Compl. ¶¶ 40–46.

Defendants' reliance on *In re PennySaver USA Publ'g*, 587 B.R. 445, 464–65 (Bankr. D. Del. 2018) and *Witmer v. Armistice Cap.*, No. 2022-0807-MTZ, 2025 WL 2350799, at *10 (Del. Ch. Aug. 14, 2025) is misplaced. *See* Defs' Br. at 16. In *In re PennySaver*, the defendants involved were non-directors and non-managers, and the Trustee alleged that regardless of their lack of position they somehow caused debtors to make a series of fraudulent transfers from debtors to non-debtor entities with whom defendants were connected. The court determined that, because they were not managers or directors, the defendants owed no default fiduciary duties to debtors.

And in *Witmer*, the court dismissed the claim for breach of fiduciary duty because the plaintiff failed to plead sufficient facts to demonstrate control. *See* 2025 WL 2350799, at *10. Notably, the defendant's alleged conduct in *Witmer* was limited to only attending a single meeting. *Id.* To the contrary, here the Defendant Directors not only attended several meetings, *see* Compl. ¶¶ 40–42, they were also intimately involved in the negotiation of TSA 2 and, as Defendants practically concede, exercised management and oversight over Structurlam as they "tried to keep

19

the Project *on track* by monitoring Structurlam's progress and "compliance with'" TSA 2.  *See* Defs.' Br. at 15 (citing Compl. ¶ 42) (emphasis in original); *see also* Compl. ¶¶ 5, 7–8, 40–42, 44–45, 48–49, 53.

Finally, Defendants flip the script and argue that *even if* they owed fiduciary duties to Structurlam U.S., they would be "immunize[d]" from liability arising from any breach of the duty of care under Structurlam U.S.'s articles of incorporation.  *See* Defs.' Br. at 17.  Notably, however, an exculpatory provision does not shield directors from liability for breaches of the duty of loyalty and good faith.  *See Malpiede v. Townson*, 780 A.2d 1075, 1093 (Del. 2004) (holding "[w]here the factual basis for a claim *solely* implicates a violation of the duty of care," protections of exculpatory provision applied to duty of care but not to other fiduciary duties (quoting *Arnold v. Society for Savings Bancorp.*, 650 A.2d 1270, 1288 (Del. 1994)); *In re Ebix, Inc.Stockholder Litig.*, No. CIV.A. 8526–VCN, 2014 WL 3696655, at *27 (Del. Ch. July 24, 2014) (holding that even under the broadest interpretation of Delaware statutory law, "directors are still personally liable for damages from breaches of the duty of loyalty or bad faith conduct." (citing *Hamilton Partners v. Highland Capital Mgmt.*, 2014 WL 1813340, at *15 (Del. Ch. May 7, 2014)); *see also In re China Agritech, Inc. S'holder Derivative Litig.*, No. CIV.A. 7163-VCL, 2013 WL 2181514, at *25 (Del. Ch. May 21, 2013) ("Because the Complaint pleads claims that implicate the duty of loyalty, including its embedded requirement of good faith, the defendants cannot invoke the exculpatory provision as a defense at this [motion to dismiss] stage.").[8]  Defendants' efforts to flip-flop their position on whether or not they owed a duty to Structurlam U.S. does not shield them from liability for breach of the duties of loyalty and good faith.

---

[8] Here too, discovery is necessary to properly evaluate this issue, including SLP's articles of incorporation and other governing documents relating to both SLP and Structurlam U.S.

### d)    The Trustee Did Not Improperly Group Plead

Defendants argue that Plaintiff improperly engaged in "group pleading"—specifically, that the Complaint "alleges no facts showing how each [Defendant] behaved wrongfully." Defs.' Br. at 11. Once again, Defendants misrepresent the legal standard and ignore key allegations within the Complaint.

As an initial matter, dismissal because of "group pleading" is rare and limited only to the most extreme circumstances, almost always within the context of the heightened pleading standard for fraud. For example, in *In re Furniture Factory Ultimate Holding, L.P.*, defendants sought dismissal, alleging group pleading. The Court disagreed, finding that because "the Complaint identifies the dates, parties, and actions or inaction of each of the D&Os," naming a "separate set of specific directors and officers involved in the particular Count," dismissal was not warranted. No. 20-12816, 2023 WL 5662747, at *11 (Bankr. D. Del. Aug. 31, 2023). The Court noted that "Delaware Courts . . . have rejected defendants group pleading contention when the complaint identifies the dates, parties, and actions or inactions of the defendants which were sufficient to put them on notice of the specific conduct that gives rise to the breach of fiduciary claims asserted against them." *Id.* (citing *Buchwald Cap. Advisors v. Schoen* (In re OPP Liquidating), Adv. No. 21-50431 (MFW), 2022 WL 774063, at *8 (Bankr. D. Del. Mar. 14, 2022) (footnote omitted)); *see also In re UD Dissolution Corp.*, 629 B.R. 11, 37 (Bankr. D. Del. 2021) (rejecting the argument that a plaintiff improperly group pled because a complaint contained "sufficient details of actions taken . . . collectively and individually . . ."); *Cf. In re Heckmann Corp. Sec. Litig.*, 869 F. Supp. 2d 519, 538 (D. Del. 2012) (refusing to dismiss a case for group pleading, despite a heightened pleading standard, finding that the "amended complaint does not rest solely on an individual defendant's relationship to the Company").

Here, the Complaint does not make vague allegations regarding all directors and officers of SLP or Structurlam U.S.—rather, the Complaint identifies three specific individuals and specifically identifies the information they knew (or should have known), identifies each individual's role at Walmart and on the SLP board, details the Defendants' specific involvement throughout the relevant period, and then alleges how and when Defendants breached their duties. For example:

- "Defendant Brian Hooper was listed in the TSA 2 as an individual to 'send all notices and other communications required or permitted to be given hereunder' for Walmart," and was "also the sole signatory for Walmart," even though "he had already been serving on SLP's board." Compl., ¶ 31.

- Defendant Hooper "exercised his authority over Debtors even beyond the management oversight of participation in the joint board meetings," having "weekly meetings with that CEO to closely monitor Debtors' production." *Id*. ¶ 44.

- "Defendant Cindi Marsiglio was the primary point of contact at Walmart for negotiating the Project." *Id*. ¶ 32.

- Each of the three Defendants "possessed inside knowledge regarding Debtors' business and Walmart's business." *Id*. ¶ 37.

- Each Defendant attended "joint board meetings" where confidential information was "freely exchanged." *Id*. ¶¶ 39–40.

- Each Defendant "discussed" a litany of items related to the Project, including specifically coordination with Walmart. *Id*. ¶¶ 41–42.

- Each of the three Defendants "insisted on joining weekly subcommittee calls to discuss matters relating to Debtors' production," where confidential information was discussed and Defendants gained further detailed insight into Debtors' financial situation. *Id*. ¶¶ 45–46.

- Defendants were "intimately involved in the Project" and thus knew specific information about the Project and financing. *Id*. ¶ 53.

- Defendants "fail[ed] to act or intervene" to ensure Walmart complied with its agreements. *Id*. ¶ 56.

At times, and as alleged in the Complaint, the three Defendants acted together, gaining confidential information and failing to meet their fiduciary duties to act in support of Debtors.

Given the level of detail within the Complaint, Defendants' assertion that the Complaint "alleges no facts showing how each [Defendant] acted wrongfully," *see* Defs.' Br. at 11, is specious. And notably, Defendants' assertion is inconsistent with their admission just a few pages later—that "the Complaint includes" "three factual allegations that mention Defendants by name," *see id.* at 14. At this early stage in the case, when pertinent information is almost solely controlled by Defendants, the Complaint meets the liberal pleading standard and does not warrant dismissal.[9]

The cases cited by Defendants highlight how extreme a pleading deficiency must be for a court to consider dismissal on this ground. In *Burtch v. Zachem*, the plaintiff used "the broadest terms" to identify a larger group of defendants, with "similarly broad" descriptions of each defendant individually. Adv. No. 22-50255 (TMH), 2023 WL 6140247, at *3 (Bankr. D. Del. Sept. 19, 2023). The complaint did not "distinguish in what capacity the Defendants served the Debtors, which Debtors they were affiliated with, or the time they served," instead alleging each defendant "to have one or more of many possible roles with 'all or certain of the Debtors.'" *Id.* Given this utter lack of particularity, the court dismissed, agreeing that "the Complaint lacks sufficient detail to support any inference that the Debtors' financial woes resulted from any Defendant's purposeful acts." *Id.* And tellingly, despite the utter lack of any detail whatsoever, even here the court refused to dismiss with prejudice, choosing to dismiss without prejudice to allow amendment. *See id.* at *4. And in *Genworth Fin., Inc. Consol Deriv. Litig.*, No. 11901-

---

[9] In any event, group pleading may be permitted when a plaintiff alleges that defendants acted in concert to facilitate a general scheme and information to prove greater particularity is within the control of defendants. *See, e.g.*, *Hawk Mountain v. Mirra*, 2016 WL 4541032, at *2 (D. Del. Aug. 31, 2016); *see also In re Zohar III Corp.*, 639 B.R. 73, 103 (Bankr. D. Del. 2022) (analyzing an equitable subordination claim, finding group pleading "permissible under these circumstances" when analyzing a complaint that alleged "a unified group that exercised power together"). To the extent that certain allegations within the Complaint are more generalized, this is because discovery has not yet occurred, and the specifics of what each of the three Defendants did are exclusively within the control of Defendants. *See In re Genesis Health Ventures, Inc.*, 355 B.R. 438, 456 (Bankr. D. Del. 2006) (rejecting a group pleading contention despite a pleading standard that is higher than that in this case, noting that plaintiffs have made an effort to gather information that is in control of defendants, and thus "deem[ing] it appropriate to apply a slightly more relaxed standard").

VCS, 2021 WL 4452338 (Del. Ch. Sept. 29, 2021), the court dismissed a complaint for multiple independent reasons, including because the complaint engaged in "serial group pleading and fail[ed] to separate any claim against" certain defendants. *Id.* at \*1. The court acknowledged, however, that group pleading was "not the primary problem" against one set of defendants; instead only extending the group pleading dismissal rationale to a set of defendants that was defined and then *not even mentioned* in the entire complaint, with "no specific allegations" directed against them. *Id.* at \*22. There are simply no parallels to the Complaint here, where specific individuals are named, with specific and detailed allegations. The Trustee's breach of fiduciary duty claim should not be dismissed.

### C.    The Trustee's Tortious Interference Claim Is Sufficiently Pled and Should Not Be Dismissed

Under Delaware law, to establish a claim for tortious interference with a contract, a plaintiff must allege: "(1) a contract, (2) about which defendant knew, and (3) an intentional act that is a significant factor in causing the breach of such contract, (4) without justification, (5) which causes injury." *See Bhole, Inc. v. Shore Invs.*, 67 A.3d 444, 453 (Del. 2013). Similarly, Arkansas law requires a plaintiff alleging tortious interference to allege: (1) the existence of a valid contractual relationship or a business expectancy; (2) knowledge of the relationship or expectancy on the part of the interfering party; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted. *See Crockett v. C.A.G. Invs., Inc.*, 2010 Ark. 90, 9 (Ark. 2010) (citing *K.C. Props. of N.W. Ark. v. Lowell Inv. Partners*, 373 Ark. 14, 26 (Ark. 2008)).

Here, the Trustee's Complaint adequately alleges a claim of tortious interference under both Delaware and Arkansas law. Structurlam U.S. and Walmart entered into a valid and binding contract, TSA 2. *See* Compl. ¶¶ 29–30, 81. Defendants, as directors of Debtors and senior

executives at Walmart, knew or should have known about the existence of TSA 2.  Compl. ¶¶ 50, 51–69, 82–83.  Defendants exploited their positions and knowledge of Structurlam U.S.'s financial position to, without justification, benefit Walmart in making material and unreasonable modifications to TSA 2, failing to meet its obligations with respect to acceptance of delivery of Goods by Structurlam U.S., failing to meet its payment obligations to Structurlam U.S., and ultimately terminating its contract with Structurlam U.S.  Compl. ¶¶ 51–69.  As a result of Defendants' conduct and Walmart's termination of TSA 2, Structurlam U.S. suffered financial ruin.  Compl. ¶¶ 68–69, 85.

Defendants argue that the Trustee's Complaint should be dismissed because it purportedly fails to plead any "third-party" involvement, as Defendant Directors are employees of Walmart and therefore could not interfere with Walmart's own contract.  *See* Defs.' Br. at 18–19.  Defendants rely on their employment to shield themselves for liability for their conduct, and in doing so concede that their interests aligned with Walmart, and not with SLP, to whom they owed a fiduciary duty.  *See id.*  The operative question under both Delaware and Arkansas law is whether Defendants were acting outside the scope of their authority as Walmart senior executives when they interfered with TSA 2.  *See Faulkner v. Arkansas Children's Hosp.*, 69 S.W.3d 393, 405 (2002); *see also Int'l Ass'n of Heat & Frost Insulators & Asbestos Workers Loc. Union 42 v. Absolute Env't Servs.*, 814 F. Supp. 392, 400 (D. Del. 1993) ("[A]n officer or director may be held personally liable for tortious interference with a contract of the corporation if…said officer or director exceeds the scope of his agency in so doing.").  The only appropriate answer is in the affirmative.  As Directors of SLP, Defendant Directors were duty-bound to pledge their allegiance to SLP, and not Walmart.

Defendants also argue that the Trustee's Complaint fails to show that Defendant Directors committed any improper or intentionally wrongful interference with the contract.  *See* Defs.' Br.

at 20. Impropriety is determined by (1) the nature of the actor's conduct, (2) the actor's motive, (3) the interests of the other with which the actor's conduct interferes, (4) the interests sought to be advanced by the actor, (5) the social interests in protecting the freedom of the action of the actor and the contractual interests of the other, and (6) the proximity or remoteness of the actor's conduct to the interference and the relations between the parties. *Baptist Health v. Murphy*, 373 S.W.3d 269, 282 (Ark. 2010). The actor's conduct is to be considered in light of what is fair and reasonable under the circumstances. *Hamby v. Health Mgmt. Assocs.*, 462 S.W.3d 346, 349–50 (Ark. Ct. App. 2015) (citing *Hayes v. Advanced Towing Servs.*, 73 Ark. App. 36, 40 S.W.3d 800 (Ark. Ct. App. 2001)). The determination of whether the interference is improper is ordinarily left to the jury. *Id.*

Here, the allegations in the Complaint meet the elements of impropriety sufficiently to survive the motion to dismiss. As alleged, Defendants exploited their access to information regarding Structurlam U.S.'s financial status and knew or should have known that the profits guaranteed to Structurlam U.S. under TSA 2 were crucial to Structurlam U.S.'s financial stability and ultimate success. Compl. ¶ 83. As Directors of SLP, Defendants were privy to certain information regarding Structurlam U.S.'s financial situation and ultimately acted not for the benefit of SLP, but for the benefit of Walmart.

The cases Defendants cite are factually distinguishable. In *Mountain Home Flight Serv., v. Baxter Cnty.*, No. 3:12-CV-03027, the court found the defendants' conduct was not improper because the plaintiff failed to allege "unlawful behavior or impropriety" associated with unlawful competition. *See* 2012 WL 2339722, at *5–7 (W.D. Ark. June 19, 2012). Similarly, the court in *Oak Creek Inv. Props. v. Am. Elec. Power Serv. Corp.*, No. 4:18-CV-4009, in a summary judgment posture after discovery, found the defendant's conduct not to be improper when it terminated its construction contract with the plaintiff because plaintiff failed to proffer sufficient evidence of

impropriety; merely proffering a single email (from an employee of the defendant's agent to the defendant, soliciting an opinion on the plaintiff's quality of work). *See* 2020 WL 759929, at *9 (W.D. Ark. Feb. 14, 2020). The court noted that the plaintiff's subjective opinion of his own quality of work and speculation that the defendant's agent "*must have said something to someone* because [plaintiff] believes it was blacklisted across a three-state region and lost the majority of its energy-efficiency customers after [agent] terminated its business relationship" was not enough to constitute impropriety. *Id.* The same cannot be said here, particularly given that, unlike in that case, discovery has not even yet occurred.

At a minimum, Defendants failed to operate in good faith. *See California Safe Soil, v. KDC Agribusiness*, No. 2021-0498-MTZ, 2025 WL 98479, at *25 (Del. Ch. Jan. 10, 2025) ("Accordingly, in order to state a claim for tortious interference against a corporate officer, a plaintiff must plead adequately that the officer (1) 'was not pursuing legitimate profit-seeking activities of the affiliated enterprise in good faith,' or (2) 'was motivated by some malicious or other bad faith purpose to injure the plaintiff.'")); *see also supra* IV.B.2.a; *see also* Compl. ¶¶ 56; 58; 60; 63; 65.

Lastly, Defendants disingenuously contend that the Trustee alleges no facts that Defendants induced Walmart to breach TSA 2. *See* Defs.' Br. at 21. But as noted, the Trustee alleged that Defendants intentionally exploited their knowledge of Structurlam U.S.'s financial status and used it as leverage to benefit Walmart, which allowed Walmart to financially strong-arm Structurlam U.S. by failing to meet its contractual obligations under TSA 2, and, ultimately, terminating its contract with Structurlam U.S. *See* Compl. ¶¶ 46; 50; 51–69.

For the foregoing reasons, Plaintiff's tortious interference claim is sufficiently pled and should not be dismissed.

### D.    If the Court Is Inclined to Grant Relief to Defendants, It Should Deny Defendants' Motion to Dismiss and Allow the Trustee to Amend Under Rule 15

Despite Defendants' repeated attempt to confuse the proper standard and mischaracterize the allegations within the Complaint, the Complaint is sufficiently detailed with respect to both counts, more than meeting the liberal pleading standard under Rule 8[10], and Defendants' Motion to Dismiss should fail on this basis alone.  However, should the Court be inclined to grant relief to Defendants, it should allow the Trustee to amend the Complaint under Rule 15[11] of the Federal Rules of Civil Procedure, to allow the Trustee to provide further detail.  *See generally Emerson v. Thiel College*, 296 F.3d 184, 190 (3d Cir. 2002) ("dismissal with prejudice is only appropriate in limited circumstances and doubts should be resolved in favor of reaching a decision on the merits"); *Poulis v. State Farm Fire and Cas.*, 747 F.2d 863, 967 (3d Cir. 1984) (dismissals with prejudice are "drastic sanctions"); *see also In re Global Link Telecom Corp.*, 327 B.R. 711, 718 (Bankr. D. Del. 2005) (permitting a trustee to amend the Complaint for a second time, noting that a dismissal is justified if there is "undue delay, bad faith, a dilatory motive, prejudice or futility," all of which did not exist); *Burtch*, 2023 WL 6140247, at *4 (dismissing without prejudice to allow for amendment, noting the Third Circuit's inclination to "resolve cases on the merits").

## V.    CONCLUSION

For the foregoing reasons, the Trustee asks that Defendants' Motion to Dismiss be denied in its entirety.

---

[10] *See* Fed. R. Bankr. P. 7008:  "Fed. R. Civ. P. 8 applies in an adversary proceeding."
[11] *See* Fed. R. Bankr. P. 7015, which adopts Fed. R. Civ. P. 15.

4936-6184-0250 v1

Dated: November 17, 2025

/s/ Leslie B. Spoltore
Leslie B. Spoltore, Esquire
Edmond M. George, Esquire (admitted *pro hac vice*)
OBERMAYER REBMANN MAXWELL & HIPPEL LLP
123 South Justison Street, Suite 100
Wilmington, DE 19801
Phone: (302) 238-6947
Email: leslie.spoltore@obermayer.com

- and -

**GILBERT LLP**
Kami E. Quinn (admitted *pro hac vice*)
Daniel I. Wolf (admitted *pro hac vice*)
Sonia W. Murphy (admitted *pro hac vice*)
Charles K. Cooper (admitted *pro hac vice*)
Brandon A. Levey (admitted *pro hac vice*)
December L. Huddleston (*pro hac vice* forthcoming)
700 Pennsylvania Avenue, SE
Suite 400
Washington, DC 20003
Telephone: (202) 772-1940
Facsimile: (202) 772-3333
Email: quinnk@gilbertlegal.com
wolfd@gilbertlegal.com
murphys@gilbertlegal.com
cooperc@gilbertlegal.com
leveyb@gilbertlegal.com
huddlestond@gilbertlegal.com

*Attorneys for Plaintiff Heather L. Barlow as*
*Liquidating Trustee of the Structurlam Liquidating*
*Trust*

29